MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
C. MITCHELL HENDY (SBN 282036)
*mhendy@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500

A. JOHN P. MANCINI
(*pro hac vice forthcoming*)
*jmancini@mayerbrown.com*
JONATHAN W. THOMAS
(*pro hac vice forthcoming*)
*jwthomas@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2295

Attorneys for Plaintiff
Pasadena Tournament of Roses Association

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASADENA TOURNAMENT OF ROSES ASSOCIATION,<br><br>              Plaintiff,<br><br>    v.<br><br>CITY OF PASADENA,<br><br>              Defendant. | Case No.: 2:21-cv-01051<br><br>**COMPLAINT FOR: (1) DECLARATORY RELIEF UNDER 28 U.S.C. § 2201(a); (2) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114; (3) UNFAIR COMPETITION, FALSE ASSOCIATION, FALSE ENDORSEMENT, AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A); (4) FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B); (5) VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200 et seq.; (6) COMMON LAW  TRADEMARK INFRINGEMENT; (7) BREACH OF CONTRACT; AND (8) SLANDER OF TITLE**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, the Pasadena Tournament of Roses Association ("Plaintiff" or "TOR"), by and through its undersigned counsel, as and for its Complaint against Defendant, the City of Pasadena ("Defendant"), hereby alleges as follows based on knowledge of its own actions, and on information and belief as to all other matters (unless indicated otherwise herein):

## NATURE OF THE ACTION

1.    For over a century, Plaintiff has been hosting its famous ROSE PARADE and ROSE BOWL GAME as part of its annual New Year's Day Celebration.  This action concerns Defendant's bad-faith scheme of sowing confusion in the marketplace about whether it owns any rights in the famous ROSE BOWL GAME and ROSE BOWL trademarks as related to the storied game and annual celebration.  To be clear, Defendant does not.  This action also concerns whether Plaintiff needs Defendant's consent under the parties' Master License Agreement ("MLA") to host the Rose Bowl Game outside of Pasadena, California if a Force Majeure event occurs.  To be clear, Plaintiff does not.

2.    Plaintiff owns an incontestable federal trademark registration for its ROSE BOWL GAME mark.  Moreover, in the MLA, Defendant acknowledged Plaintiff's ownership of the ROSE BOWL GAME and ROSE BOWL marks, and agreed not to use those marks in connection with advertising or promoting the Rose Bowl Game.  What is more, Defendant expressly disclaimed before the United States Patent and Trademark Office any right to use the ROSE BOWL mark for the Rose Bowl Game.

3.    Nonetheless, Defendant gave a recent interview to *The New York Times*, wherein Defendant falsely claimed to have an ownership interest in the ROSE BOWL GAME and/or ROSE BOWL marks for the Rose Bowl Game.  Defendant also has breached—and continues to breach—the MLA by using "Rose Bowl" to advertise and promote the Rose Bowl Game.

4.      Compounding Defendant's unlawful acts is its recent claim in a letter to Plaintiff that Plaintiff needs Defendant's consent to host the Rose Bowl Game outside of Rose Bowl Stadium.  Nothing could be further from the truth.  To be sure, under Section 2.1 of the MLA, Plaintiff has no obligation to host its Rose Bowl Game at Rose Bowl Stadium if a Force Majeure event occurs.  What is more, the MLA makes clear that Defendant can terminate the MLA if Plaintiff hosts its Rose Bowl Game outside of Rose Bowl Stadium without Defendant's consent—except in the event of Force Majeure, in which case Defendant's consent is not required.

5.      Defendant has resorted to engaging in a public campaign that falsely conveys that it has an ownership interest in Plaintiff's Rose Bowl Game and its associated intellectual property—effectively re-writing the MLA's express terms to the contrary.  Put simply, Plaintiff will not tolerate this conduct—and neither should this Court.

6.      Based on the foregoing, Plaintiff brings this action for declaratory relief concerning its exclusive ownership of the ROSE BOWL GAME and ROSE BOWL marks.[1]  Plaintiff also seeks relief for trademark infringement, unfair competition, false association, false endorsement, false designation of origin, false advertising, breach of contract, and slander of title under federal and California law based on Defendant's unauthorized use of Plaintiff's marks and false statements concerning Defendant's alleged ownership of Plaintiff's marks.  Plaintiff additionally seeks preliminary and permanent injunctive relief against Defendant concerning the conduct discussed herein.

## THE PARTIES

7.      Plaintiff, the Pasadena Tournament of Roses of Association, is a non-profit organized and existing under the laws of the State of California.  Plaintiff

---

[1]  Plaintiff has the exclusive right to use the ROSE BOWL marks in connection with the Rose Parade, Rose Bowl Game, and Plaintiff's other activities.  Defendant has rights to ROSE BOWL (but not ROSE BOWL GAME) marks in other contexts that are not relevant to this action.

maintains its headquarters and principal place of business at 391 South Orange Grove Boulevard, Pasadena, California 91184.

8.    Defendant, the City of Pasadena, is a municipal corporation organized and existing under the laws of the State of California.  Defendant maintains its headquarters (*i.e.*, City Hall) at Pasadena City Hall, 100 North Garfield Avenue, Pasadena, California 91101.

## **JURISDICTION AND VENUE**

9.    The claims for trademark infringement, unfair competition, false association, false endorsement, false designation of origin, and false advertising, respectively, asserted in Counts IV-VII, *infra*, arise under Sections 32 and 43(a) of the U.S. Trademark Act (as amended) namely, 15 U.S.C. § 1050 *et seq*.  Accordingly, this Court has subject matter and original jurisdiction over Counts IV-VII pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121.

10.    The claims for declaratory relief asserted in Counts I-III, *infra*, arise under the Declaratory Judgment Act, namely, 28 U.S.C. § 2201(a).  As alleged, *infra*, an actual and justiciable case or controversy exists between the parties concerning ownership of the ROSE BOWL GAME and ROSE BOWL trademarks, as well as the parties' contractual rights under the MLA if a Force Majeure event occurs.  Accordingly, this Court has subject matter and original jurisdiction over Counts I-III pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201(a), and 15 U.S.C. § 1121.

11.    The claims for unfair competition, trademark infringement, breach of contract, and slander of title, respectively, asserted in Counts VIII-XI, *infra*, arise under California statutory and common law, and are so related to the federal claims asserted in Counts I-VI, *infra*, that they form part of the same case or controversy.  Accordingly, this Court has supplemental jurisdiction over Counts VIII-XII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

3

12.     Defendant, the City of Pasadena, is located in this District. Accordingly, Defendant is subject to general personal jurisdiction in this District, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

13.     The unlawful acts and conduct of Defendant, as alleged, *infra*, occurred in substantial part in this District.  Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

14.     As alleged, *supra*, Defendant is subject to personal jurisdiction in this District.  Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.      Plaintiff and its World-Famous Rose Parade Rose Bowl Game**

15.     For over a century, Plaintiff has been entertaining bleary-eyed people around the world with its world-famous "America's New Year Celebration."

16.     Since 1890, Plaintiff has organized and hosted its annual New Year's Day Rose Parade.  Plaintiff incorporated as the Pasadena Tournament of Roses Association in 1896.  And beginning in 1902, Plaintiff added an annual New Year's Day college football game to its New Year Celebration.

17.     Plaintiff hosted its first college football game—known as the Tournament East-West football game—in 1902 at Tournament Park in Pasadena, California.

18.     From 1916 to 1922, Plaintiff hosted an annual college football game—known as the Tournament of Roses—at Tournament Park.

19.     However, by 1922, Plaintiff's Tournament of Roses Game had become so popular that it needed more seating capacity than Tournament Park could offer. Accordingly, Plaintiff raised over $270,000 to construct a new stadium, which it named Rose Bowl Stadium.

20.     In 1923, Plaintiff hosted its Rose Bowl Game for the first time in the new stadium that would later be named Rose Bowl Stadium.

21.   Plaintiff has invested (and continues to invest) substantial time, skill, labor, and resources in ensuring that its Rose Bowl Game is a high quality, fan-friendly experience that is one of the marquee college football games each year.

22.   Based on Plaintiff's extensive efforts, its Rose Bowl Game has been college football's highest-attended bowl game, and consistently one of the most-watched bowl games, for more than 60 years.

**B.   COVID-19 and Plaintiff's 2021 Rose Bowl Game**

23.   In addition to high quality, Plaintiff's Rose Bowl game is synonymous with many "firsts."

24.   For example, in 1927, Plaintiff's Rose Bowl Game was the first transcontinental radio broadcast of a sporting event.

25.   As another example, in 1952, Plaintiff's Rose Bowl Game was the first nationally telecasted college football game, and in 2015, it was the first College Football Playoff semifinal.

26.   In light of the COVID-19 pandemic, 2021 was another "first": for the first time since 1942, Plaintiff's Rose Bowl Game took place outside of Pasadena, California.

27.   Plaintiff did not make the decision to host the 2021 iteration of its Rose Bowl Game outside of Pasadena, California; instead, it was the combination of the State of California's COVID-19 regulations in place at the time, and the College Football Playoff Committee's ("CFP") invocation of *force majeure* under its agreement with Plaintiff, which resulted in the relocation of Plaintiff's Rose Bowl Game in 2021 from Rose Bowl Stadium in Pasadena, California to AT&T Stadium in Arlington, Texas.

28.   In the weeks leading up to the 2021 iteration of Plaintiff's Rose Bowl Game, California had forbidden large public gatherings, including in-person fan and family attendance at Plaintiff's Rose Bowl Game.  *See* CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, Regional Stay at Home Order, December 3, 2020; *see also*

https://www.dailynews.com/2020/12/21/as-coronavirus-surges-gov-gavin-newsom-explains-why-pasadenas-rose-bowl-game-has-to-hit-the-road/ (last accessed, February 4, 2021). Additionally, the threats posed by COVID-19 had taken unprecedented tolls on the public-health infrastructure in the Greater Los Angeles area. Indeed, many of the area's hospitals were stressed beyond capability.

29.     Additionally, CFP declared a force majeure event under its agreement with Plaintiff after determining that "the Los Angeles metropolitan area is unsuitable as the site for a CFP semifinal game" given the recent "surge of [COVID-19] cases has strained hospital capacity in the region, and that medical experts have advised against travel into the Los Angeles metropolitan area."

30.     The CFP announced its decision to move the Rose Bowl Game from Pasadena out of concern for the well-being of the student-athletes, their families, and the coaching and training staffs. The CFP's decision was consistent with the views of highly regarded medical experts at the time that it would be "socially and morally irresponsible to bring large numbers of healthy young people to Southern California right now," as Pasadena regional hospitals could not guarantee availability of care for a player, coach, or staff member at the Rose Bowl Stadium.

31.     All of these unfortunate circumstances—COVID-19, California's restrictions on public gatherings, and the CFP's decision to relocate the College Football Playoff semifinal game between Alabama and Notre Dame—were beyond Plaintiff's control.

32.     Nonetheless, Plaintiff worked tirelessly to keep its Rose Bowl Game at the Rose Bowl Stadium. For example, Plaintiff repeatedly—but unsuccessfully—sought an exemption from government officials to allow a limited number of players' guests, families, and coaches to attend the 2021 Rose Bowl Game. However, given the health risks posed even with just the essential attendees (*e.g.*, the players, coaches, and staffs) at any game in the Los Angeles-Pasadena

region, the CFP—under pressure from the participating teams—decided to relocate the 2021 Rose Bowl Game from Pasadena, California to Arlington, Texas.

**C.     Plaintiff and Defendant's Relationship Concerning the Rose Bowl Game**

33.     In an act of generosity that is seemingly lost on Defendant today, Plaintiff deeded Rose Bowl Stadium to Defendant in 1922.

34.     Over the ensuing years, Plaintiff and Defendant have entered into a series of written agreements that govern their rights and obligations concerning, *inter alia*, Plaintiff's Rose Bowl Game, and Rose Bowl Stadium.  Three of those written agreements are relevant to this action, namely: (i) a Master License Agreement (as amended and restated; the "MLA"); (ii) a Trademark Agreement; and (ii) a trademark Consent Agreement.

**i.     The MLA**

35.     Five Sections of the MLA—*i.e.*, §§ 2.1; 1.1; 20.4; 20.4; and 9.1, respectively—and the parties' December 2020 Amendment to the MLA are relevant to this action.

36.     Section 2.1 of the MLA in provides, in pertinent part:

> "The Association agrees that it shall cause the Game to be played on Game Day at the Rose Bowl Stadium during each Tournament Year, except in the event of Force Majeure which prevents the Game from being played at the Rose Bowl Stadium on Game Day despite the use by the Association and the City of their commercially reasonable efforts to remedy such event of Force Majeure; provided, however, if the parties are unable to remedy such event of Force Majeure and the Association elects to cause the Game to be played on a day other than Game Day, then the Association shall cause the Game to be played at the Rose Bowl Stadium on such alternative date; provided, that the Rose Bowl Stadium is in a condition that would permit the Game to be played on such alternate date.  In the event the Association's right to host the Game is terminated or suspended for any reason, then the Association shall use its good faith and commercially reasonable efforts to have such right reinstated as soon as reasonably possible.  In the event the Association's right to host the Game is terminated or suspended for any reason other than the fault of the Association, then the Association's obligation to cause the Game to be played (and related obligations, such as selling tickets), pay the Rose Bowl Use Fee and make the Pasadena Tournament of Roses Association Gift shall be abated for the Tournament Years in which the Game cannot be hosted until such time as the Association's right to host the Game has been

1    reinstated; provided, that the Association is using its good faith and
     commercially reasonable efforts to have such right reinstated as soon
2    as reasonably possible."  MLA § 2.1

3        37.    Section 1.1 of the MLA in provides, in pertinent part, that Force

4    Majeure means:

5
         "[A]ny delay or failure to perform . . . [that] results from causes **beyond**
6        **the party's reasonable control**, including **but not limited to**, . . .
         **quarantine restrictions,** . . . **acts of government** (including, but not
7        limited to, any law, rule, order, regulation, or direction of the United
         States Government or of any other government . . .) [or] **communicable**
8        **disease** . . . , provided, however, that the parties shall use commercially
         reasonable efforts **to carry out the purposes of this Agreement**
9        notwithstanding the occurrence of an event of Force Majeure."  MLA
         § 1.1 (emphasis added).
10

11       38.    Section 20.4 of the MLA in provides, in pertinent part:

12
         "[I]f the performance by any Party under this Agreement is delayed or
13       prevented in whole or in part by a Force Majeure, such party shall be
         excused, discharged and released of performance to the extent such
14       performances or obligation is so delayed or prevented by such
         occurrence without liability of any kind. . . . Nothing contained herein
15       shall be construed as requiring any Party to accede to any demands or
         to settle any disputes with, labor or labor unions, suppliers or other
16       parties that such Party considers unreasonable."  MLA § 20.4

17
         39.    Section 20.2(B)(2) of the MLA provides, *in toto*:
18

19       "At the option of the City, and upon written notice to the Association,
         the City shall have the right to terminate this Agreement, in whole or in
20       part, for any of the following reasons: […] Upon the Association's
         failure, **for any reason except Force Majeure**, stages the Parade or
21       Game, anywhere other than in the City, unless consented to in writing
         by the City."  MLA § 20.2(B)(2)  (emphasis added).
22

23       40.    Section 9.1 of the MLA in provides, *in toto*:

24
         "The rights of the City and the Association with respect to Marks
25       relating to the Rose Bowl Stadium shall be as set forth in the Trademark
         Agreement attached hereto as <u>Exhibit E-1</u> and the Consent Agreement
26       attached hereto as <u>Exhibit E-2</u>.  The list of such Marks that are owned
         by the Association is set forth in <u>Exhibit F</u>.  The Association shall not
27       transfer to a third party any of the Association's rights in Marks relating
         to the Game in a manner that would allow the third party to host a post-
28       season college football game named 'The Rose Bowl Game' or any

                                         8

variants or derivatives thereof, in any stadium other than the Rose Bowl Stadium."  MLA   § 9.1 (emphasis in original)

41.    On December 29, 2020, Plaintiff and Defendant duly executed an Amendment to the MLA, wherein they agreed that, *inter alia*:

a.    Plaintiff "shall be excused, discharged and released of its performance obligations contained in Section 2.1 (License to Use) of the Agreement to cause the Game to be played on Game Day in TY21 at the Rose Bowl Stadium […]."

b.    "[T]he rights of the City and the Association with respect to Marks relating to the Rose Bowl Stadium are as set forth in the Trademark Agreement and the Consent Agreement attached to the Agreement as Exhibit E-1 and E-2, respectively.  A list of marks (registered and unregistered) owned by the Association is set forth in Exhibit F to the Agreement.  The Association shall not transfer to a third party the Association's ownership in the Marks relating to the Game in a manner that would allow the third party the right to host a post-season college football game named 'The Rose Bowl Game' or any variants or derivatives thereof, in any stadium other than the Rose Bowl Stadium."

**ii.    The Trademark Agreement**

42.    As referenced, *supra*, Section 9.1 of the MLA expressly incorporates by reference a Trademark Agreement between Plaintiff and Defendant.

43.    On April 30, 1997, Plaintiff and Defendant duly executed the Trademark Agreement "to establish a protocol for the City and the Association, respectively, to obtain registration of trademark rights in the mark ROSE BOWL for goods and services in connection with the places, activities and events owned, sponsored or authorized by each of them."  Trademark Agreement at 3.

44.    In the Trademark Agreement, the parties defined "the events of the Association" as: "stag[ing] an annual New Year's Day celebration known as the Tournament of Roses, consisting of a parade, an intercollegiate football game known as the Rose Bowl Game, and related events held in and around Pasadena, California, including at and around the Rose Bowl stadium […]."  Trademark Agreement at 1.

45.    In the Trademark Agreement, the City agreed that, *inter alia*:

a.  The City would not "register the trademark ROSE BOWL, the ROSE LOGO, ROSE BOWL DESIGN […] or other trademarks containing the words 'Rose Bowl' […] for <u>the events of the Association</u>" (*id*. at ¶ 2); and

b.  The City would not "in any way interfere with the [Association's] use of any mark containing the words ROSE BOWL, provided said […] use [is] in compliance with this Trademark Agreement." *Id*. at ¶ 3.

### iii.  The Consent Agreement

46.  As alleged, *supra*, the Section 9.1 of the MLA also expressly incorporates by reference a trademark Consent Agreement between Plaintiff and Defendant.

47.  Concurrently with executing the Trademark Agreement, Plaintiff and Defendant executed a trademark Consent Agreement on April 30, 1997.

48.  In the Consent Agreement, the parties defined the "Association's Services" as including use of the ROSE BOWL mark for organizing, promoting, and staging an annual intersectional football game and related events." Consent Agreement at 1-2.

49.  In the Consent Agreement, Defendant agreed "not to use any mark containing the words ROSE BOWL on or in connection with the Association's Goods and Services." *Id*. at ¶ 3.

50.  In the Consent Agreement, Defendant acknowledged:

a.  "the Association is the creator and the continuing sponsor and organizer of the nation's first post-season intersectional intercollegiate football game (known as the Rose Bowl Game) and is the owner of the name ROSE BOWL for that game […]" (Consent Agreement at 1), and

b.  "the Rose Bowl Game and Rose Parade are internationally known and seen." *Id*.

## D.  Plaintiff's Family of ROSE Trademarks

51.  Consumers receive widespread exposure to Plaintiff's Rose Bowl Game.  For example, approximately 19 million viewers tuned in to watch the 2021

iteration of Plaintiff's Rose Bowl Game between the University of Alabama and the University of Notre Dame.  As another example, until 2020, approximately 90,000 spectators attended Plaintiff's Rose Bowl Game each year.

52.    For over a century, Plaintiff has been using a family of "ROSE"-formative trademarks to identify itself as the source of its widely viewed and attended Rose Bowl Game.  Such marks include, for example: (i) "ROSE BOWL GAME"; (ii) "ROSE BOWL"; (iii) "TOURNAMENT OF ROSES"; and (iv) distinctive logos that incorporate a design of a rose (collectively, the "Family of ROSE Marks").

53.    Plaintiff has invested substantial resources in advertising and promoting its Rose Bowl Game to consumers throughout the world (including the United States) under its Family of ROSE Marks.  Examples of these advertising and promotional efforts include: (i) national advertising campaigns on television, social media, the radio, and the Internet, and (ii) advertisements in widely circulated print media, such as *Sports Illustrated*.

54.    In addition to at-home viewership and in-person attendance, consumers receive regular—and unsolicited—exposure to Plaintiff's Rose Bowl Game offered under its Family of ROSE Marks in widely circulated media outlets, including, for example: *The New York Times*; *The Wall Street Journal*; *Forbes*; *Yahoo!*; *CBS Sports*; *Sporting News*; and more.

55.    Plaintiff's Rose Bowl Game offered under its Family of ROSE Marks also generates many millions of dollars in revenue each year.

56.    Based on the foregoing, consumers associate the Family of ROSE Marks (including, without limitation, the ROSE BOWL GAME and ROSE BOWL Marks) uniquely with Plaintiff and its famous Rose Bowl Game.

57.    In the course of continuously using and protecting the Family of ROSE Marks, Plaintiff has obtained several federal trademark registrations.  Examples of Plaintiff's federal trademark registrations for its Family of ROSE Marks include:

a.    U.S. Trademark Reg. No. 1,022,242, which covers the standard character "ROSE BOWL GAME" mark in Class 41 for "entertainment and educational services—namely, organizing, promoting and staging an annual intersectional football game and related events" (the "'242 Registration").

b.    U.S. Trademark Reg. No. 1,949,907, which covers the standard character "ROSE BOWL" mark in Class 14 for "jewelry and lapel pins," and Class 16 for "playing cards, paper pennants and publications, namely, souvenir programs for parade and bowl game events" (the "'907 Registration").

c.    U.S. Trademark Reg. No. 1,994,297, which covers the standard character "ROSE BOWL" in Class 25 for "clothing; namely, shirts caps, sweaters, and jackets" (the "'297 Registration").

d.    U.S. Trademark Reg. No. 1,022,886, which covers the standard character "TOURNAMENT OF ROSES" mark in Class 41 for "entertainment and educational services—namely, organizing, promoting, and staging of annual cultural events, including floral pageants, parades, and sporting events, and events and attractions related thereto" (the "'886 Registration").

e.    U.S. Trademark Reg. No. 1,875,090, which covers the standard character "TOURNAMENT OF ROSES" mark in Class 9 for "magnets and prerecorded videotapes of parades and football games sponsored by the applicant and related events and activities"; in Class 14 for "jewelry, commemorative pins, decorative pins, rings, watches [and clocks]"; in Class 16 for "bookmarks, letter openers, and publications, namely, souvenir programs"; and Class 25 for "clothing; namely, shirts of various kinds, caps, visors, pants, warm-up suits, sweaters, robes and jackets" (the "'090 Registration").

f.    U.S. Trademark Reg. No. 1,021,701, which covers the standard character "ROSE PARADE" mark in Class 41 for "entertainment and educational services—namely, organizing, promoting and staging an annual parade and related events" (the "'701 Registration").

g.    U.S. Trademark Reg. No. 1,856,603, which covers the standard character "ROSE PARADE" mark in Class 14 for "lapel pins and jewelry," and Class 25 for "clothing; namely, shirts and T-Shirts") (the "'603 Registration").

h.    U.S. Trademark Reg. No. 3,011,684, which covers the standard character "ROSE BOWL PARADE" mark in Class 41 for "educational and entertainment services, namely, organizing, staging an annual parade" (the "'684 Registration").

58.    The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are valid, subsisting, and on the Principal Register.  True and correct

12

copies of the '242; '907; '297; '886; '090; '701; '603; and '684 Registrations are attached as **Exhibits 1** through **8**, respectively.

59.    The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are "incontestable" within the meaning of 15 U.S.C. § 1115(b).

60.    The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are conclusive evidence of Plaintiff's ownership of the marks covered by such Registrations.

61.    The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are conclusive evidence of the validity of the marks covered by such Registrations.

62.    The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are conclusive evidence of the validity of the registration of the marks covered by such Registrations.

63.    The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are conclusive evidence of the Plaintiff's exclusive right to use the marks covered by such Registrations throughout the United States on or in connection with the goods and/or services specified in the such Registrations.

**E.    Defendant's Unlawful Conduct**

64.    Beginning in December 2020, Defendant embarked on an unlawful scheme designed to sow confusion in the marketplace about who owns the rights to the Rose Bowl Game and its related intellectual property.

65.    For example, on January 1, 2021, the Mayor of Pasadena, acting in his official capacity and on Defendant's behalf, gave an interview to *The New York Times*, the write-up of which included the following false, misleading, and/or deceptive statements of fact attributable to Defendant ("Defendant's January 1 Statements"):

a.    "the city [] shares a trademark on the name of the game with the Tournament of Roses Association […]."

b.    "The football game belongs to the City of Pasadena and the people of Pasadena."

66.    Defendant's January 1 Statements are false, misleading, and/or deceptive.

67.    The "game" referenced in Defendant's January 1 Statements is Plaintiff's Rose Bowl Game.

68.    As alleged, *supra*, Plaintiff exclusively owns the incontestable '242 Registration, which conclusively confers upon Plaintiff the exclusive right to use its ROSE BOWL GAME Mark for an annual college football game anywhere in the United States.

69.    Moreover, both the ROSE BOWL GAME and ROSE BOWL Marks appear in Exhibit F to the MLA.  As alleged, *supra*, Defendant expressly agreed in Section 9.1 of the MLA, and again Paragraph 5(d) of the 2020 Amendment to the MLA, that Plaintiff owns the unregistered and registered marks in Exhibit F to the MLA.

70.    What is more, as alleged, *supra*, in the Trademark Agreement, and the Consent Agreement, Defendant agreed that:

a.    Plaintiff is the exclusive owner of the ROSE BOWL GAME trademark, and

b.    Plaintiff owns the ROSE BOWL mark for use in connection with an annual college football game.

71.    Defendant also expressly disclaimed in U.S. Trademark Reg. No. 2,305,139 any right to use the standard character ROSE BOWL mark for "the promoting of an annual intersectional football game and parade."

72.    As another example of Defendant's unlawful conduct, on January 14, 2021, Defendant made the inset "TBT" (which is shorthand for "Throwback Thursday") post on @RoseBowlStadium's official Instagram account (the "Post"):

14

73.     The hashtag "#RoseBowl" in the Post refers to Plaintiff's Rose Bowl Game.   However, as alleged, *supra*, in the Trademark Agreement, and the Consent Agreement, Defendant agreed:

    a.     That Plaintiff's "Services" included, *inter alia*, using the ROSE BOWL mark for an annual college football game; and

    b.     Not to use the ROSE BOWL mark in connection with Plaintiff's Services.

**F.     Defendant's January 7, 2021, Letter to Plaintiff**

74.     On January 7, 2021, Defendant sent a letter to Plaintiff, wherein Defendant stated that, *inter alia*, in the event of a force majeure, the MLA allegedly gives Defendant the right to restrict Plaintiff from hosting the Rose Bowl Game in a venue other than Rose Bowl Stadium ("Defendant's January 7 Letter").

75.     The statements in Defendant's January 7 Letter are unfounded.  To be sure, as alleged, *supra*, the MLA does not give the Defendant ***any*** rights to restrict Plaintiff's usage of the marks; instead, under the MLA, Plaintiff has agreed to host its Rose Bowl Game each year at the Rose Bowl Stadium "except in the event of Force Majeure."  What is more, under Section 20.2(B)(2) of the MLA, Defendant can terminate the MLA if Plaintiff hosts its Rose Bowl Game somewhere other than Rose Bowl Stadium without Defendant's consent—except in the event of force majeure, in which case Defendant's consent is not required.

76.     Defendant's January 7 Letter also confirms that there is an ongoing case or controversy between the parties about: (i) ownership of Plaintiff's Rose Bowl Game and its related intellectual property, and (ii) Plaintiff's right to host its Rose Bowl Game at a location other than Rose Bowl Stadium without Defendant's consent.

77.     Accordingly, the for reasons alleged above and below, Plaintiff asserts the claims for relief, *infra*, wherein it seeks declarations concerning the parties' rights with respect to the Rose Bowl Game and its related intellectual property; to ameliorate the harm that Defendant is causing by disseminating false claims concerning ownership of the Rose Bowl Game and its related intellectual property; to ameliorate the likelihood of confusion that Defendant is causing by using the ROSE BOWL mark; and to remedy Defendant's breach of the MLA.

## CLAIMS FOR RELIEF

### COUNT I
(*Declaratory Relief Under 28 U.S.C.§ 2201(a)*)
(*Declaration of Plaintiff's Exclusive Ownership of the ROSE BOWL GAME and ROSE BOWL Marks for Use in Connection with the Rose Bowl Game*)

78.     Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 77 as though set forth fully herein.

79.     Count I is a claim for declaratory relief under 28 U.S.C. § 2201(a).

80.     Defendant has created an actual and justiciable case or controversy by stating that it has an ownership interest in the ROSE BOWL GAME and ROSE BOWL Marks for use in connection with the Rose Bowl Game (including, without limitation, in Defendant's False, Misleading, and Deceptive Statements).

81.     Plaintiff is the exclusive owner of the incontestable '242 Registration, which covers the ROSE BOWL GAME mark for use in connection with the Rose Bowl Game.

82.     Both the ROSE BOWL GAME and ROSE BOWL Marks appear in Exhibit F to the MLA.  Defendant expressly agreed in Section 9.1 of the MLA, and

again Paragraph 5(d) of the 2020 Amendment to the MLA, that Plaintiff owns the unregistered and registered marks in Exhibit F to the MLA.

83.     In the Trademark Agreement, and the Consent Agreement, Defendant agreed that:

a.     Plaintiff is the exclusive owner of the ROSE BOWL GAME trademark, and

b.     Plaintiff owns the ROSE BOWL mark for use in connection with an annual college football game.

84.     Defendant also expressly disclaimed in U.S. Trademark Reg. No. 2,305,139 any right to use the standard character ROSE BOWL mark for "the promoting of an annual intersectional football game and parade."

85.     Based on the foregoing, Plaintiff seeks a declaration that Plaintiff is the exclusive owner of the ROSE BOWL GAME and ROSE BOWL Marks for use in connection with the Rose Bowl Game.

### COUNT II
*(Declaratory Relief Under 28 U.S.C. § 2201(a))*
*(Declaration of Defendant's Lack of Rights in the ROSE BOWL GAME and ROSE BOWL Marks for Use in Connection with the Rose Bowl Game)*

86.     Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 85 as though set forth fully herein.

87.     Count II is a claim for declaratory relief under 28 U.S.C. § 2201(a).

88.     Defendant has created an actual and justiciable case or controversy by stating that it has an ownership interest in the ROSE BOWL GAME and ROSE BOWL Marks for use in connection with the Rose Bowl Game (including, without limitation, in Defendant's False, Misleading, and Deceptive Statements).

89.     Based on Plaintiff's exclusive ownership of the ROSE BOWL GAME and ROSE BOWL Marks for use in connection with the Rose Bowl Game, Plaintiff seeks a declaration that Defendant has no ownership interest in either the ROSE BOWL GAME Mark or the ROSE BOWL Mark for use in connection with the Rose Bowl Game.

**COUNT III**
(*Declaratory Relief Under 28 U.S.C.§ 2201(a)*)
(*Declaration of Plaintiff's Right to Host its Rose Bowl Game Anywhere Without Defendant's Consent in the Event of Force Majeure*)

90.     Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 89 as though set forth fully herein.

91.     Count III is a claim for declaratory relief under 28 U.S.C. § 2201(a).

92.     Defendant has created an actual and justiciable case or controversy by stating that, under the MLA, it can restrict where Plaintiff hosts the Rose Bowl Game in the event of force majeure.

93.     Under Section 2.1 of the MLA, Plaintiff has agreed to host its Rose Bowl Game each year at Rose Bowl Stadium "except in the event of Force Majeure."

94.     Under Section 20.2(B)(2) of the MLA, Defendant can terminate the MLA if Plaintiff hosts its Rose Bowl Game somewhere other than Rose Bowl Stadium without Defendant's consent—except in the event of force majeure.

95.     Based on the foregoing, Plaintiff seeks a declaration that, if a force majeure event occurs under the MLA, then Plaintiff can host its Rose Bowl Game anywhere without Defendant's consent.

**COUNT IV**
(*Federal Trademark Infringement Under 15 U.S.C. § 1114(1)*)
(*Defendant's Infringement of Plaintiff's Federally Registered Family of ROSE Marks*)

96.     Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 95 as though set forth fully herein.

97.     Count IV is a claim for infringement of federally registered trademarks under 15 U.S.C. § 1114(1).

98.     Plaintiff has the exclusive right to use each member of its federally registered Family of ROSE Marks in United States commerce.  In particular, Plaintiff has the exclusive right to use its federally registered ROSE BOWL GAME mark in United States commerce to advertise and promote its Rose Bowl Game. Plaintiff also has the exclusive right to use its federally registered ROSE BOWL

18

marks in United States commerce to advertise and promote, *inter alia*, souvenir programs for its Rose Bowl Game.

99.   Plaintiff's exclusive rights in and to its Family of ROSES Marks predate any rights that Defendant could establish in any mark that consists of "Rose Bowl" in whole and/or in part.

100.   Each member of Plaintiff's Family of ROSE Marks is inherently distinctive when used in connection with Plaintiff's Rose Bowl Game.

101.   Each member of Plaintiff's Family of ROSE Marks identifies Plaintiff as the exclusive source of goods and services offered thereunder.  Accordingly, each member of Plaintiff's Family of ROSE Marks has acquired distinctiveness.

102.   Defendant is reproducing Plaintiff's Family of ROSES Marks and/or using colorable imitations and/or confusingly similar variations thereof in United States commerce.

103.   For example, Defendant made the Post on the Rose Bowl Stadium's official Instagram account.  In the Post, Defendant used the hashtag "#RoseBowl," and included a cover of the souvenir program from the 1956 iteration of the Rose Bowl Game.  In the Post, Defendant also referenced Four Roses Bourbon, which previously sponsored the Rose Bowl Game.  Based on this overall context, consumers understand and recognize the use of "#RoseBowl" in Post as referring to the Rose Bowl Game.

104.   As alleged herein, Defendant's use of Plaintiff's Family of ROSE Marks and/or colorable imitations and/or confusingly similar variations thereof in United States commerce on, for, and/or in connection with advertising and promoting goods and services that consumers uniquely associate with Plaintiff (including, without limitation, the Rose Bowl Game and souvenir programs therefor) is likely to cause confusion, cause mistake, and/or cause deception about whether Defendant and Rose Bowl Stadium is the host of Plaintiff's Rose Bowl Game.

105.   Plaintiff has not consented to Defendant's use of any member of Plaintiff's Family of ROSE Marks for any purpose.

106.   Upon information and belief, Defendant's conduct, as alleged herein, is in furtherance of Defendant's willful, deliberate, and bad-faith scheme of trading upon the extensive consumer goodwill, reputation, and commercial success of goods and services that Plaintiff offers under its Family of ROSE Marks (including, without limitation, Plaintiff's Rose Bowl Game).

107.   Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

108.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

109.   Plaintiff has no adequate remedy at law.

**COUNT V**
(*Federal Trademark Infringement Under 15 U.S.C. § 1125(a)(1)(A)*)
(*Defendant's Infringement of Plaintiff's BOWL GAME Mark*)

110.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 109 as though set forth fully herein.

111.   Count V is a claim for infringement of federally registered trademarks under 15 U.S.C. § 1125(a)(1)(A).

112.   Plaintiff's Family of ROSE Marks includes the unregistered ROSE BOWL Mark for use in connection with advertising, promoting, and hosting the Rose Bowl Game.

113.   Plaintiff has the exclusive right at common law to use its ROSE BOWL Mark in United States commerce to advertise and promote its Rose Bowl Game.

114.   Plaintiff's exclusive rights in and to its ROSE BOWL Mark predate any rights that Defendant could establish in any mark that consists of "Rose Bowl" in whole and/or in part.

115.   Plaintiff's ROSE BOWL Mark is inherently distinctive when used in connection with Plaintiff's Rose Bowl Game.

116. Plaintiff's ROSE BOWL Mark identifies Plaintiff as the exclusive source of Plaintiff's Rose Bowl Game. Accordingly, Plaintiff's ROSE BOWL Mark has acquired distinctiveness.

117. Defendant is reproducing Plaintiff's ROSE BOWL Mark in its in United States commerce.

118. For example, Defendant made the Post on the Rose Bowl Stadium's official Instagram account. In the Post, Defendant used the hashtag "#RoseBowl," and included a cover of the souvenir program from the 1956 iteration of the Rose Bowl Game. In the Post, Defendant also referenced Four Roses Bourbon, which previously sponsored the Rose Bowl Game. Based on this overall context, consumers understand and recognize the use of "#RoseBowl" in Post as referring to the Rose Bowl Game.

119. As alleged herein, Defendant's use of Plaintiff's ROSE BOWL Mark in United States commerce on, for, and/or in connection with advertising and promoting the Rose Bowl Game is likely to cause confusion, cause mistake, and/or cause deception about whether Defendant and Rose Bowl Stadium is the host of Plaintiff's Rose Bowl Game.

120. Plaintiff has not consented to Defendant's use of Plaintiff's ROSE BOWL Mark for any purpose.

121. Upon information and belief, Defendant's conduct, as alleged herein, is in furtherance of Defendant's willful, deliberate, and bad-faith scheme of trading upon the extensive consumer goodwill, reputation, and commercial success of Plaintiff's Rose Bowl Game offered under Plaintiff's ROSE BOWL Mark.

122. Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1125(a)(1)(A).

123. Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

1

124.   Plaintiff has no adequate remedy at law.

2

**COUNT VI**

3

(*Federal Unfair Competition, False Association, False Endorsement, and False Designation of Origin Under 15 U.S.C. § 1125(a)(1)(A))*
(*Defendant's Unauthorized Use of Plaintiff's Family of ROSE Marks*)

4

5

125.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 124  as though set forth fully herein.

6

7

126.   Count VI is a claim for federal unfair competition, false association, false endorsement, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

8

9

127.   Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false association, false endorsement, and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

10

11

128.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

12

13

129.   Plaintiff has no adequate remedy at law.

14

**COUNT VII**

15

(*Federal False Advertising Under 15 U.S.C. § 1125(a)(1)(B)*
(*Defendant's False, Misleading, and Deceptive Statements*)

16

130.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 129 as though set forth fully herein.

17

18

131.   Count VII is a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B).

19

20

132.   Defendant's January 1 Statements constitute commercial advertising and/or commercial promotion.

21

22

133.   Defendant' January 1 Statements are false, misleading, and/or deceptive.

23

24

134.   Defendant's January 1 Statements are material to consumers' decision to license Plaintiff's ROSE BOWL GAME and/or ROSE BOWL Marks.

25

26

27

28

135.   Defendant's January 1 Statements are likely to deceive consumers into believing that Defendant is owner of the ROSE BOWL GAME and/or ROSE BOWL Marks.

136.   Defendant's January 1 Statements are likely to deceive consumers into believing that Defendant is owner of the Rose Bowl Game.

137.   Defendant placed its January 1 Statements into interstate commerce by, *inter alia*, having them published in an article on *The New Times'* website, which is publicly available and accessible to consumers throughout the United States.

138.   Defendant's January 1 Statements directly and/or proximately caused and/or is likely to cause Plaintiff to suffer harm in the form of lost licensing opportunities, as well as irreparable diminution to the reputation, fame, and goodwill of Plaintiff's ROSE BOWL GAME and ROSE BOWL Marks, and Rose Bowl Game.

139.   Upon information and belief, Defendant's acts and conduct complained of herein (including, without limitation, Defendant's January 1 Statements) constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

140.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

141.   Plaintiff has no adequate remedy at law.

**COUNT VIII**
(*Unfair Competition Under Cal. Bus. & Prof. Code § 17200*)
(*Defendant's Unauthorized Use of Plaintiff's Family of ROSE Marks*)

142.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 141 as though set forth fully herein.

143.   Count VIII is a claim for unfair competition under CAL. BUS. & PROF. CODE § 17200.

144.   Upon information and belief, Defendant's acts and conduct complained of herein (including, without limitation, Defendant's violations of the Lanham Act) are unlawful and unfair and, therefore, violate CAL. BUS. & PROF. CODE § 17200.

23

145.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

146.   Plaintiff has no adequate remedy at law.

**COUNT IX**
(*Trademark Infringement Under California Common Law*)
(*Defendant's Infringement of Plaintiff's Family of ROSE Marks*)

147.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 146 as though set forth fully herein.

148.   Count IX is a claim for trademark infringement under California common law.

149.   Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of California common law.

150.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

151.   Plaintiff has no adequate remedy at law.

**COUNT X**
(*Breach of Contract Under California Law*)
(*Defendant's Material Breaches of the MLA*)

152.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 151 as though set forth fully herein.

153.   Count X is a claim for breach of contract under California law.

154.   Plaintiff and Defendant duly executed the MLA, the Trademark Agreement, and the Consent Agreement, all of which are subject to the laws of California.

155.   Plaintiff has performed all of its obligations under the MLA, the Trademark Agreement, and the Consent Agreement.

156.   Defendant is materially breaching its obligations under the MLA, the Trademark Agreement, and the Consent Agreement by interfering with Plaintiff's exclusive right to use its ROSE BOWL GAME and ROSE BOWL Marks (including, for example, Defendant's False, Misleading, and Deceptive Statements).

157.   Defendant is materially breaching its obligations under the MLA, the Trademark Agreement, and the Consent Agreement by using the ROSE BOWL Mark in connection with advertising and promoting the Rose Bowl Game (including, for example, the Post).

158.   Upon information and belief, Defendant's acts and conduct complained of herein constitute breach of contract in violation of California law.

159.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

160.   Plaintiff has no adequate remedy at law.

## COUNT XI
*(Slander of Title)*
*(Defendant's False Publications)*

161.    Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 160 as though set forth fully herein.

162.   Count XI is a claim for slander of title under California law.

163.   Defendant caused its January 1 Statements to be published to the public in newspapers such as *The New York Times*.

164.   That publication was without privilege or justification.

165.   The Defendant's January 1 Statements that Defendant has ownership rights in the Rose Bowl Game and associated Marks are false.

166.   Defendant's January 1 Statements cause Plaintiff direct, immediate, and ongoing pecuniary loss.  Defendant's false statements impair Plaintiff's ability to exploit its exclusive property, including but not limited to its contractual relationships with entities such as CFP and ESPN.

167.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

168.   Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, based on the foregoing, Plaintiff prays that the Court enter judgment as follows:

A. Declaration that Plaintiff is the exclusive owner of the ROSE BOWL GAME mark and—when used in connection with organizing, staging, promoting, and/or hosting an annual college football game—the ROSE BOWL marks;

B. Declaration that Defendant has no rights in the ROSE BOWL GAME mark or—when used in connection with organizing, staging, promoting, and/or hosting an annual college football game—the ROSE BOWL marks;

C. Declaration that, if a Force Majeure event occurs under the MLA, then Plaintiff, by itself and/or through a licensee, can organize, stage, promote, and/or host the Rose Bowl Game anywhere in the United States without Defendant's consent;

D. An Order declaring that Defendant's conduct, as alleged herein, constitutes trademark infringement in violation of 15 U.S.C. § 1114(a); 15 U.S.C. § 1125(a)(1)(A); and California common law;

E. An Order declaring that Defendant's conduct, as alleged herein, constitutes unfair competition, false endorsement, false association, false designation of origin, and slander of title in violation of 15 U.S.C. § 1125(a)(1)(A); CAL. BUS. & PROF. CODE § 17200; and California common law;

F. An Order declaring that Defendant's conduct. as alleged herein, constitutes false, misleading, and/or deceptive advertising in violation of 15 U.S.C. § 43(a)(1)(B);

G. An Order declaring that Defendant's conduct, as alleged herein, constitutes breach of contract under California law;

H. Pursuant to 15 U.S.C. § 1116(a):

  1.   Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons in active concert and

participation with them, from using either the ROSE BOWL GAME or—in connection with advertising, marketing, promoting, hosting, and/or staging an annual college football game—the ROSE BOWL marks, as well as any other mark that is confusingly similar and/or identical to the ROSE BOWL GAME and ROSE BOWL marks;

2.   Ordering Defendant to file with the Court and serve upon Plaintiff's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

I.   Pursuant to 15 U.S.C. § 1117(a):

1.  Awarding to Plaintiff its costs incurred in this lawsuit;

2.  Declaring that Defendant's conduct, as alleged herein, is "exceptional";

3.  Declaring that Plaintiff is the "prevailing party" in this lawsuit; and

4.  Awarding to Plaintiff its reasonable attorneys' fees incurred in this lawsuit, including fees pursuant to California Code of Civil Procedure § 1021.5 and as otherwise allowed by law;

J.   Pursuant to 15 U.S.C. § 1118:

1.   Ordering the destruction of all unauthorized goods and materials within Defendant's possession, custody, or control that contain, feature, display, and/or bear the ROSE BOWL GAME and ROSE BOWL marks, whether in tangible or intangible form, and

2.   Ordering the destruction of all unauthorized goods and materials within Defendant's possession, custody, or control that contain, feature, display, and/or bear any mark that is identical and/or confusingly similar to the ROSE BOWL GAME or ROSE BOWL mark; and

K.   Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

///
///
///
///
///
///
///
///

27

1

## __JURY DEMAND__

2  Plaintiff requests a trial by jury for all issues so triable pursuant to FED. R.

3  CIV. P. 38(b) and 38(c).

4

5  Dated:  February 4, 2021        Respectfully submitted,

6                                  MAYER BROWN LLP

7                                  By:  */s/ John Nadolenco*

8                                  JOHN NADOLENCO (SBN 181128)
9                                  *jnadolenco@mayerbrown.com*
                                   C. MITCHELL HENDY (SBN 282036)
10                                 *mhendy@mayerbrown.com*
                                   350 South Grand Avenue, 25th Floor
11                                 Los Angeles, CA 90071-1503
                                   Telephone: (213) 229-9500
12
                                   A. JOHN P. MANCINI
13                                 (*pro hac vice forthcoming*)
                                   *jmancini@mayerbrown.com*
14                                 JONATHAN W. THOMAS
                                   (*pro hac vice forthcoming*)
15                                 *jwthomas@mayerbrown.com*
                                   1221 Avenue of the Americas
16                                 New York, NY 10020
                                   Telephone: (212) 506-2295
17
18                                 Attorneys for Plaintiff
                                   Pasadena Tournament
19                                 of Roses Association

20

21

22

23

24

25

26

27

28