MAYER BROWN LLP
JOHN NADOLENCO (SBN 181128)
*jnadolenco@mayerbrown.com*
C. MITCHELL HENDY (SBN 282036)
*mhendy@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500

A. JOHN P. MANCINI (*pro hac vice*)
*jmancini@mayerbrown.com*
JONATHAN W. THOMAS (*pro hac vice*)
*jwthomas@mayerbrown.com*
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2295

Attorneys for Plaintiff
Pasadena Tournament of Roses Association

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASADENA TOURNAMENT OF ROSES ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PASADENA,<br><br>Defendant. | Case No.: 2:21-cv-01051<br><br>**FIRST AMENDED COMPLAINT FOR: (1) DECLARATORY RELIEF UNDER 28 U.S.C. § 2201(a); (2) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114; (3) UNFAIR COMPETITION, FALSE ASSOCIATION, FALSE ENDORSEMENT, AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(A); (4) FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B); (5) VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200 et seq.; (6) COMMON LAW TRADEMARK INFRINGEMENT; AND (7) BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, the Pasadena Tournament of Roses Association (Plaintiff), by and through its undersigned counsel, as and for its First Amended Complaint against Defendant, the City of Pasadena (Defendant), hereby alleges as follows based on knowledge of its own actions, and on information and belief as to all other matters (unless indicated otherwise herein):

## NATURE OF THE ACTION

1.     This lawsuit concerns a dispute between Plaintiff and Defendant over the famous ROSE BOWL GAME and ROSE BOWL trademarks.

2.     For over a century, Plaintiff has hosted its world-famous ROSE PARADE and ROSE BOWL GAME as part of its annual New Year's Day Celebration.  Plaintiff traditionally hosts the Rose Bowl Game at the Rose Bowl Stadium, pursuant to a contract with Defendant, known as the Master License Agreement (MLA).

3.     Plaintiff's ability to host the renowned annual game comes, in part, from its ownership of an incontestable federal trademark registration for its ROSE BOWL GAME mark, and ownership of its ROSE BOWL marks, when used in connection with organizing, hosting, and promoting Plaintiff's annual events. Until relatively recently, to Plaintiff's knowledge, Defendant never contested Plaintiff's ownership of such prized intellectual property rights.  In fact, Defendant expressly disclaimed before the United States Patent and Trademark Office (USPTO) any right to use Defendant's own ROSE BOWL mark in connection with the Rose Bowl Game.  Those restrictions are also integrated in the MLA, in which Defendant acknowledged Plaintiff's sole ownership of the ROSE BOWL GAME and—as relates to Plaintiff's athletic events—ROSE BOWL marks.[1]

---

[1]     Plaintiff has the exclusive right to use the ROSE BOWL marks in connection with the Rose Parade, Rose Bowl Game, and Plaintiff's other activities. Defendant has rights to ROSE BOWL (but not ROSE BOWL GAME) marks in other contexts that are not relevant to this action.

4.     Plaintiff is—and always has been—the sole organizer and host of its annual Rose Bowl Game.  For many years, Defendant has worked with Plaintiff behind the scenes to help ensure the success of Plaintiff's annual Rose Bowl Game hosted at Defendant's Rose Bowl Stadium—with those joint efforts resulting in great economic benefit to Plaintiff, Defendant, the Pasadena community, and the greater Los Angeles area.  The largest economic benefit goes to the various college athletics conferences and universities that compete in the college football post-season match ups each year.

5.     Recently, however, Defendant has severely disrupted that working relationship by improperly and unlawfully interfering with and infringing Plaintiff's exclusive trademark rights.

6.     **First**, Defendant has engaged in a publicity campaign in which it has repeatedly and falsely asserted—both directly and indirectly—that it has some sort of co-ownership interest in the ROSE BOWL GAME, the ROSE BOWL trademarks used in connection with organizing, promoting, and staging the Rose Bowl Game and related events, and the Rose Bowl Game itself.  For example, Defendant gave an interview to *The New York Times*, during which Defendant falsely claimed to have an ownership interest in the Rose Bowl Game and Plaintiff's ROSE BOWL GAME and ROSE BOWL marks.  More recently, and after the Tournament initiated this lawsuit, the Mayor was reported as telling the *Pasadena Star-News* that he "stands by what he told the *Times*' reporters," and that city officials say "the City own[s] the rights to the game's namesake."  In the same article, one of Defendant's council members is quoted as saying "We [the City] have the rights to the name 'Rose Bowl' because you can't play the Rose Bowl Game outside of the Rose Bowl Stadium without the city's permission."

7.     Judging from Defendant's more recent filings in this case, it appears that Defendant now wishes to take back (at least to some degree) those incorrect statements—claiming in briefs to the Court that Defendant no longer contests

Plaintiff's ownership of the marks.  Plaintiff is prepared to accept Defendant's unequivocal recognition of Plaintiff's ownership rights in the marks, and to that end voluntarily dismisses Counts 1 and 11 of the original complaint without prejudice.[2]  That said, Defendant has not relented in publicly claiming rights to restrain Plaintiff's use of Plaintiff's marks—rights that Defendant does not have and never has had.

8.     Specifically, both in the press and in legal correspondence with Plaintiff, Defendant has repeatedly claimed that it has the right to restrain Plaintiff from using Plaintiff's ROSE BOWL GAME and ROSE BOWL marks in hosting the Rose Bowl Game outside of Pasadena's Rose Bowl Stadium in extraordinary circumstances (known commonly, and in the MLA, as force majeure).[3]

9.     To be clear, Defendant has no such right of restraint.  The MLA is quite clear and does not provide any support for Defendant's position.  The City possesses no veto power capable of preventing Plaintiff from relocating the Rose Bowl Game in the face of a force majeure event.  Defendant's position to the contrary squarely contradicts a plain reading of the MLA.  In publicly seeking to conjure up such a non-contractual veto power, Defendant's conduct unlawfully restrains Plaintiff's right to use its exclusive and federally protected trademarks.

10.     Moreover, although the MLA does not grant—and has not granted—the City the right to restrain Plaintiff's use of its marks and rights to host the Rose Bowl Game in a force majeure event, Defendant continues to assert non-

---

[2]     Plaintiff reserves the right, however, to reassert these claims if future public statements by Defendant's officers, or other action by or on behalf of Defendant, call the sincerity of Defendant's acknowledgements into doubt.

[3]     Simultaneous with filing its motion to dismiss the original complaint, Defendant issued a press release.   In that statement, Defendant grossly mischaracterizes Plaintiff's aims in this lawsuit as asking "a court of law to assure it that it *can* move the Rose Bowl Game," full stop.  In truth—as apparent in the original complaint as it is here—Plaintiff only seeks a declaration with respect to the parties' rights during force majeure events that cannot be remedied by the parties' reasonable efforts.   Plaintiff has repeatedly emphasized—both to Defendant and the public—that it hopes to never have to host the Rose Bowl Game outside of Pasadena again.  Given the chilling effect Defendant's conduct has on Plaintiff's business opportunities, this declaratory relief is needed now.

FIRST AMENDED COMPLAINT, CASE NO. 2:21-CV-01051

contractual rights to restrict Plaintiff's use of its marks.   Given Plaintiff's incontestable federal intellectual property rights, Plaintiff petitions this Court to put a stop to Defendant's ongoing course of conduct and declare that during force majeure events which delay or prevent the Rose Bowl Game from being played in the Rose Bowl Stadium—and so long as Plaintiff cannot remedy the force majeure using commercially reasonable efforts—Plaintiff has the unfettered right to host the Rose Bowl Game and use its protected marks free from Defendant's interference.

11.   **Second**, beyond attempts to improperly impede Plaintiff's use of its intellectual property, Defendant has affirmatively infringed those trademarks.

12.   As it conceded in the MLA and in proceedings before the USPTO, Defendant has no right to use the ROSE BOWL mark in conjunction with Plaintiff's annual events—including the Rose Bowl Game.   Yet, Defendant has begun doing just that.   For example, far beyond uses to promote the Rose Bowl Game which Plaintiff has approved (such as uses in connection with selling suites and promoting the Rose Bowl Game on the stadium website) Defendant has used the Plaintiff's marks and other copyrighted Rose Bowl Game artwork in and around the Rose Bowl Stadium and on the popular social media website Instagram without Plaintiff's consent for Defendant's benefit.   Such unauthorized uses are likely to mislead consumers into believing that Defendant is the source or sponsor of Plaintiff's Rose Bowl Game.   Not only do such uses breach Defendant's obligations under the MLA, but they also constitute trademark infringement under the Lanham Act and California law.

13.   In short, this lawsuit involves ***both*** Plaintiff's federally protected trademarks and a private contract.   Defendant's conduct runs afoul of both, necessitating this Court's involvement to vindicate and protect Plaintiff's rights. Defendant's public power grab—claiming for itself non-existent veto rights that threaten Plaintiff's ability to use its intellectual property (including in negotiating

with its collegiate and corporate partners)—amounts to nothing less than an unlawful restraint on federally protected trademarks. That disrespect of Plaintiff's rights is further manifested in Defendant's unauthorized exploitation of Plaintiff's marks. All of Defendant's misconduct weaves together as an improper push by the City to entangle itself in Plaintiff's property rights and business opportunities. Now is the time—and this Court is the forum—to bring Defendant's campaign to a stop.

14.    To that end, Plaintiff asks this Court for declaratory relief concerning its exclusive ownership of the ROSE BOWL GAME and ROSE BOWL marks. Plaintiff also seeks relief for trademark infringement, unfair competition, false association, false endorsement, false designation of origin, false advertising, and breach of contract under federal and California law based on Defendant's unauthorized use of Plaintiff's marks and false statements concerning Defendant's alleged ownership of Plaintiff's marks. Plaintiff additionally seeks permanent injunctive relief against Defendant concerning the conduct discussed herein.

## THE PARTIES

15.    Plaintiff, the Pasadena Tournament of Roses of Association, is a non-profit corporation organized and existing under the laws of the State of California. Plaintiff maintains its headquarters and principal place of business at 391 South Orange Grove Boulevard, Pasadena, California 91184.

16.    Defendant, the City of Pasadena, is a municipal corporation organized and existing under the laws of the State of California. Defendant maintains its headquarters (*i.e.*, City Hall) at Pasadena City Hall, 100 North Garfield Avenue, Pasadena, California 91101.

## JURISDICTION AND VENUE

17.    The claims for trademark infringement, unfair competition, false association, false endorsement, false designation of origin, and false advertising, respectively, asserted in Counts III-VI, *infra*, arise under Sections 32 and 43(a) of

FIRST AMENDED COMPLAINT, CASE NO. 2:21-CV-01051

the U.S. Trademark Act (as amended; the "Lanham Act") namely, 15 U.S.C. § 1050 *et seq.* Accordingly, this Court has subject matter and original jurisdiction over Counts III-VI pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121.

18. The claims for unfair competition, trademark infringement, and breach of contract, respectively, asserted in Counts VII-IX, *infra*, arise under California statutory and common law, and are so related to the federal claims asserted in Counts III-VI, *infra*, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts VII-IX pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

19. As alleged, *infra*, an actual and justiciable case or controversy exists between the parties concerning ownership of federal rights in the ROSE BOWL GAME and ROSE BOWL trademarks, as well as the parties' contractual rights under the MLA if a Force Majeure event occurs. Accordingly, Plaintiff seeks declaratory relief in Counts I-II, *infra*, under the Declaratory Judgment Act, namely, 28 U.S.C. § 2201(a).

20. The declaratory relief that Plaintiff seeks in Counts I-II concerns, *inter alia*, Defendant's attempts to limit Plaintiff's ability to use Plaintiff's federally registered trademarks as provided for under the Lanham Act. Moreover, as alleged, *supra*, this Court has original and subject matter jurisdiction over Plaintiff's federal claims asserted in Counts III-VI, all of which arise under the Lanham Act. Based on the foregoing, this Court has the power to award to Plaintiff the declaratory relief that it seeks in Counts I-II as a remedy.

21. Defendant, the City of Pasadena, is located in this District. Accordingly, Defendant is subject to general personal jurisdiction in this District, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1).

22. The unlawful acts and conduct of Defendant, as alleged, *infra*, occurred in substantial part in this District. Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

23.   As alleged, *supra*, Defendant is subject to personal jurisdiction in this District.   Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.   Plaintiff and Its World-Famous Rose Parade and Rose Bowl Game**

24.   For over a century, Plaintiff has been entertaining bleary-eyed people around the world with its world-famous "America's New Year Celebration."

25.   Since 1890, Plaintiff has organized and been the sole host of its annual New Year's Day Rose Parade.   Plaintiff incorporated as the Pasadena Tournament of Roses Association in 1896.   And as early as 1902, Plaintiff added a New Year's Day college football game to its New Year Celebration.

26.   Plaintiff hosted its first college football game—known as the Tournament East-West football game—in 1902 at Tournament Park in Pasadena, California.

27.   From 1916 to 1922, Plaintiff hosted an annual college football game—known as the Tournament of Roses—at Tournament Park in Pasadena.

28.   By 1922, Plaintiff's Tournament of Roses Game had become so popular that it needed more seating capacity than Tournament Park could offer. Accordingly, Plaintiff raised over $270,000 to construct a new stadium, which it later named Rose Bowl Stadium.

29.   In 1923, Plaintiff hosted its Rose Bowl Game for the first time in the new stadium that would later be named Rose Bowl Stadium.   Plaintiff is, and always has been, the organizer and sole host of its Rose Bowl Game, whether played at the Rose Bowl Stadium or elsewhere.

30.   Plaintiff has invested (and continues to invest) substantial time, skill, labor, and resources in ensuring that its Rose Bowl Game is a high quality, fan-friendly experience that is one of the marquee college football games each year.

31.    As a direct result of Plaintiff's extensive expertise and efforts, its Rose Bowl Game has been college football's highest-attended bowl game, and consistently one of the most-watched bowl games, for more than 60 years.

**B.    COVID-19 and Plaintiff's 2021 Rose Bowl Game**

32.    In addition to high quality, Plaintiff's Rose Bowl game is synonymous with many "firsts."

33.    For example, in 1927, Plaintiff's Rose Bowl Game was the first transcontinental radio broadcast of a sporting event.

34.    As another example, in 1952, Plaintiff's Rose Bowl Game was the first nationally telecasted college football game, and in 2015, it was the first College Football Playoff semifinal.

35.    In light of the COVID-19 pandemic, 2021 was another "first": for the first time since 1942, Plaintiff's Rose Bowl Game took place outside of Pasadena, California.

36.    Plaintiff did not make the decision to host the 2021 iteration of its Rose Bowl Game outside of Pasadena, California; instead various factors all arising as a result of the pandemic of 2020 combined to make it impossible for Plaintiff to host the Rose Bowl Game in the Rose Bowl Stadium on January 1, 2021, including the streamlined activities related to the game which were necessary in the days leading up to the game.  In 2020, as it does every year, Plaintiff started the planning process early in the year and proceeded for many months to put plans in place in compliance with the myriad and evolving governmental rules and restrictions, all in an effort to hold the 2021 Rose Bowl Game at the Rose Bowl Stadium and host and manage all related activities over the course of several days.

37.    Come December, just as the regular college football season was coming to a close and the College Football Playoff Committee (CFP) was selecting teams for the college football semifinal playoff games, the pandemic reached a

crescendo in the Los Angeles area, including Pasadena.  The number of infections spiked, public government and healthcare leaders made pleas that people stay home to stem the spread of the virus, and the State of California prohibited large public gatherings, including in-person fan and family attendance at Plaintiff's Rose Bowl Game.  *See* CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, Regional Stay at Home Order, December 3, 2020; *see also* https://www.dailynews.com/2020/12/21/as-coronavirus-surges-gov-gavin-newsom-explains-why-pasadenas-rose-bowl-game-has-to-hit-the-road/ (last accessed, March 23, 2021).  The threats posed by COVID-19 had taken unprecedented tolls on the public-health infrastructure in the greater Los Angeles area.  Indeed, many of the area's hospitals were stressed beyond capacity and capability.

38.    Plaintiff worked tirelessly to keep its Rose Bowl Game at the Rose Bowl Stadium, which necessarily required it to host related events in and around the area prior to game day, including travel by hundreds of people from out of state with multiple days' stay in local hotels (many of which were closed to travelers due to government restrictions).  Plaintiff remained agile and responsive to the continuously changing regulatory and public health environment, working with its many partners to plan for the game and related activities.  Plaintiff repeatedly (albeit unsuccessfully) sought from California officials an exemption to allow a limited number of players' guests, families, and coaches to attend the 2021 Rose Bowl Game.

39.    In spite of Plaintiff's efforts, given the surge of COVID-19 cases in Southern California, the increasing government restrictions imposed to protect public health and safety, and the strained hospital capacity in the region, medical experts advised against travel into the Los Angeles metropolitan area.  The athletic conferences which make up the CFP decided that, as of December 18, 2020, the Los Angeles metropolitan area was unsuitable as a site for a college football

semifinal game and for that reason it was not feasible to play the game in Pasadena.  On this basis, on December 19, the CFP declared an event of *force majeure* under its agreement with Plaintiff, and decided that the CFP semifinal playoff game scheduled to be held in the Rose Bowl Stadium on January 1, 2021, would instead be played in AT&T Stadium in Arlington, Texas.  Because of Plaintiff's extraordinary professionalism, expertise, agility, and relationships, the CFP asked Plaintiff to host the semifinal playoff game to be played at AT&T Stadium with just 13 days for Plaintiff's staff to plan and host the game in another city.

40.   The CFP announced its decision to move the semifinal playoff game out of concern for the health and well-being of the student-athletes, their families, the coaching and training staffs, and others who would have been involved with the game.  The CFP's decision was consistent with the views of highly regarded medical experts at the time who stated that it would be "socially and morally irresponsible to bring large numbers of healthy young people to Southern California right now," as Pasadena regional hospitals could not guarantee availability of care for a player, coach, or staff member at the Rose Bowl Stadium.

41.   The social emergency and series of *force majeure* events—all arising from or derivative of the COVID-19 pandemic, the quarantines, and various evolving governmental restrictions—precluded the CFP from holding its semifinal playoff game in Pasadena and similarly prevented Plaintiff from holding the 2021 Rose Bowl Game at the Rose Bowl Stadium.

42.   All of these unfortunate circumstances—the COVID-19 pandemic, California's restrictions on travel and public gatherings, and the CFP's decision to relocate the semifinal playoff game between Alabama and Notre Dame—were beyond Plaintiff's control.  Moving the game was the last thing that Plaintiff wanted.

**C.**   **Plaintiff and Defendant's Relationship Concerning the Rose Bowl Game**

43.   In an act of generosity that is seemingly lost on Defendant today, Plaintiff deeded Rose Bowl Stadium to Defendant in 1922.

44.   Over the ensuing years, Plaintiff and Defendant have entered into a series of written agreements that govern their rights and obligations concerning, *inter alia*, Plaintiff's Rose Bowl Game, and its use of the Rose Bowl Stadium. Three of those written agreements are relevant to this action, namely: (i) the MLA, as amended and restated; (ii) a Trademark Agreement; and (ii) a trademark Consent Agreement.

**i.**   **The MLA**

45.   Five Sections of the MLA—*i.e.*, §§ 2.1; 1.1; 20.2; 20.4; and 9.1, respectively—and the parties' December 2020 Amendment to the MLA are relevant to this action.

46.   Section 2.1 of the MLA in provides, in pertinent part:

"The Association agrees that it shall cause the Game to be played on Game Day at the Rose Bowl Stadium during each Tournament Year, except in the event of Force Majeure which prevents the Game from being played at the Rose Bowl Stadium on Game Day despite the use by the Association and the City of their commercially reasonable efforts to remedy such event of Force Majeure; provided, however, if the parties are unable to remedy such event of Force Majeure and the Association elects to cause the Game to be played on a day other than Game Day, then the Association shall cause the Game to be played at the Rose Bowl Stadium on such alternative date; provided, that the Rose Bowl Stadium is in a condition that would permit the Game to be played on such alternate date.  In the event the Association's right to host the Game is terminated or suspended for any reason, then Association shall use its good faith and commercially reasonable efforts to have such right reinstated as soon as reasonably possible.  In the event the Association's right to host the Game is terminated or suspended for any reason other than the fault of the Association, then the Association's obligation to cause the Game to be played (and related obligations, such as selling tickets), pay the Rose Bowl Use Fee and make the Pasadena Tournament of Roses Association Gift shall be abated for the Tournament Years in which the Game cannot be hosted until such time as the Association's right to host the Game has been reinstated; provided, that the Association is using its good faith and commercially reasonable efforts to have such right reinstated as soon as reasonably possible."  MLA § 2.1

FIRST AMENDED COMPLAINT, CASE NO. 2:21-CV-01051

47.    Section 1.1 of the MLA in provides, in pertinent part, that Force Majeure means:

"[A]ny delay or failure to perform . . . [that] results from causes *beyond the party's reasonable control*, including *but not limited to*, . . . *quarantine restrictions,* . . . *acts of government* (including, but not limited to, any law, rule, order, regulation, or direction of the United States Government or of any other government . . .) [or] *communicable disease* . . . , provided, however, that the parties shall use commercially reasonable efforts *to carry out the purposes of this Agreement* notwithstanding the occurrence of an event of Force Majeure." MLA § 1.1 (emphasis added).

48.    Section 20.4 of the MLA in provides, in pertinent part:

"If the performance by any Party under this Agreement is delayed or prevented in whole or in part by a Force Majeure, such party shall be excused, discharged and released of performance to the extent such performances or obligation is so delayed or prevented by such occurrence without liability of any kind. . . . Nothing contained herein shall be construed as requiring any Party to accede to any demands or to settle any disputes with, labor or labor unions, suppliers or other parties that such Party considers unreasonable." MLA § 20.4

49.    Section 20.2(B)(1) of the MLA provides, *in toto*:

"At the option of the City, and upon written notice to the Association, the City shall have the right to terminate this Agreement, in whole or in part, for any of the following reasons: (1) The Association *for any reason except Force Majeure*, stages the Parade or Game, anywhere other than in the City, unless consented to in writing by the City." MLA § 20.2(B)(1)  (emphasis added).

50.    Section 9.1 of the MLA in provides, *in toto*:

"The rights of the City and the Association with respect to Marks relating to the Rose Bowl Stadium shall be as set forth in the Trademark Agreement attached hereto as <u>Exhibit E-1</u> and the Consent Agreement attached hereto as <u>Exhibit E-2</u>.  The list of such Marks that are owned by the Association is set forth in <u>Exhibit F</u>.  The Association shall not transfer to a third party any of the Association's rights in Marks relating to the Game in a manner that would allow the third party to host a post-season college football game named 'The Rose Bowl Game' or any variants or derivatives thereof, in any stadium other than the Rose Bowl Stadium." MLA   § 9.1.

51.    On December 29, 2020, Plaintiff and Defendant duly executed an Amendment to the MLA, wherein they agreed that, *inter alia*:

a.    Plaintiff "shall be excused, discharged and released of its performance obligations contained in Section 2.1 (License to Use) of

13

the Agreement to cause the Game to be played on Game Day in TY21 at the Rose Bowl Stadium […].” MLA Amendment No. 5 § 4.

b.     “[T]he rights of the City and the Association with respect to Marks relating to the Rose Bowl Stadium are as set forth in the Trademark Agreement and the Consent Agreement attached to the Agreement as Exhibit E-1 and E-2, respectively.  A list of marks (registered and unregistered) owned by the Association is set forth in Exhibit F to the Agreement.  The Association shall not transfer to a third party the Association's ownership in the Marks relating to the Game in a manner that would allow the third party the right to host a post-season college football game named 'The Rose Bowl Game' or any variants or derivatives thereof, in any stadium other than the Rose Bowl Stadium.” MLA Amendment No. 5 § 5.d.

### ii.     The Trademark Agreement

52.     Section 9.1 of the MLA expressly incorporates by reference a Trademark Agreement between Plaintiff and Defendant.

53.     On or about April 30, 1997, Plaintiff and Defendant duly executed the Trademark Agreement “to establish a protocol for the City and the Association, respectively, to obtain registration of trademark rights in the mark ROSE BOWL for goods and services in connection with the places, activities and events owned, sponsored or authorized by each of them.”  Trademark Agreement at 3.

54.     In the Trademark Agreement, the parties defined “the events of the Association” as: “stag[ing] an annual New Year's Day celebration known as the Tournament of Roses, consisting of a parade, an intercollegiate football game known as the Rose Bowl Game, and related events held in and around Pasadena, California, including at and around the Rose Bowl stadium […].” Trademark Agreement at 1.

55.     In the Trademark Agreement, the City agreed that, *inter alia*:

a.     The City could “register the trademark ROSE BOWL, the ROSE LOGO, ROSE BOWL DESIGN […] or other trademarks containing the words 'Rose Bowl' for goods or services in connection with or in promotion of a stadium and events occurring therein or related thereto, ***except for the events of the Association***” (*id*. at ¶ 2) (emphasis added); and

b.     The City would not “in any way interfere with the [Association's] use of any mark containing the words ROSE BOWL,

14

FIRST AMENDED COMPLAINT, CASE NO. 2:21-CV-01051

provided said [...] use [is] in compliance with this Trademark Agreement." *Id.* at ¶ 3.

### iii.    The Consent Agreement

56.    Section 9.1 of the MLA also expressly incorporates by reference a trademark Consent Agreement between Plaintiff and Defendant.

57.    Concurrently with executing the Trademark Agreement, Plaintiff and Defendant executed a trademark Consent Agreement on or about April 30, 1997.

58.    In the Consent Agreement, the parties defined the "Association's Services" as including use of the ROSE BOWL mark for organizing, promoting, and staging an annual intersectional football game and related events." Consent Agreement at 1-2.

59.    In the Consent Agreement, Defendant agreed "not to use any mark containing the words ROSE BOWL on or in connection with the Association's Goods and Services." *Id.* at ¶ 3.

60.    In the Consent Agreement, Defendant acknowledged:

a.    "the Association is the creator and the continuing sponsor and organizer of the nation's first post-season intersectional intercollegiate football game (known as the Rose Bowl Game) and is the owner of the name ROSE BOWL for that game [...]" (Consent Agreement at 1), and

b.    "the Rose Bowl Game and Rose Parade are internationally known and seen." *Id.*

### D.    Plaintiff's Family of ROSE Trademarks

61.    Consumers receive widespread exposure to Plaintiff's Rose Bowl Game.  For example, approximately 19 million viewers tuned in to watch the 2021 iteration of Plaintiff's Rose Bowl Game between the University of Alabama and the University of Notre Dame.  As another example, in addition to the wide television viewership, until 2020, approximately 90,000 spectators attended Plaintiff's Rose Bowl Game each year.

62.  For over a century, Plaintiff has been using a family of "ROSE"-formative trademarks to identify itself as the source of its widely viewed and attended Rose Bowl Game.  Such marks include, for example: (i) "ROSE BOWL GAME"; (ii) "ROSE BOWL"; (iii) "TOURNAMENT OF ROSES"; and (iv) distinctive logos that incorporate a design of a unique rose (collectively, the Family of ROSE Marks).

63.  Plaintiff has invested substantial resources in advertising and promoting its Rose Bowl Game to consumers throughout the world (including the United States) under its Family of ROSE Marks.  Examples of these advertising and promotional efforts include: (i) national advertising campaigns on television, social media, the radio, and the Internet, and (ii) advertisements in widely circulated print media, such as *Sports Illustrated*.

64.  In addition to at-home viewership and in-person attendance, consumers receive regular—and unsolicited—exposure to Plaintiff's Rose Bowl Game offered under its Family of ROSE Marks in widely circulated media outlets, including, for example: *The New York Times*; *The Wall Street Journal*; *Forbes*; *Yahoo!*; *CBS Sports*; *Sporting News*; and more.

65.  Plaintiff's Rose Bowl Game offered under its Family of ROSE Marks also generates many millions of dollars in revenue each year.

66.  Based on the foregoing, consumers associate the Family of ROSE Marks (including, without limitation, the ROSE BOWL GAME and ROSE BOWL Marks) uniquely with Plaintiff and its famous Rose Bowl Game.

67.  In the course of continuously using and protecting the Family of ROSE Marks, Plaintiff has obtained several federal trademark registrations. Examples of Plaintiff's federal trademark registrations for its Family of ROSE Marks include:

a.  U.S. Trademark Reg. No. 1,022,242, which covers the standard character "ROSE BOWL GAME" mark in Class 41 for "entertainment and educational services—namely, organizing,

promoting and staging an annual intersectional football game and related events" (the "'242 Registration").

b.      U.S. Trademark Reg. No. 1,949,907, which covers the standard character "ROSE BOWL" mark in Class 14 for "jewelry and lapel pins," and Class 16 for "playing cards, paper pennants and publications, namely, souvenir programs for parade and bowl game events" (the "'907 Registration").

c.      U.S. Trademark Reg. No. 1,994,297, which covers the standard character "ROSE BOWL" in Class 25 for "clothing; namely, shirts caps, sweaters, and jackets" (the "'297 Registration").

d.      U.S. Trademark Reg. No. 1,022,886, which covers the standard character "TOURNAMENT OF ROSES" mark in Class 41 for "entertainment and educational services—namely, organizing, promoting, and staging of annual cultural events, including floral pageants, parades, and sporting events, and events and attractions related thereto" (the "'886 Registration").

e.      U.S. Trademark Reg. No. 1,875,090, which covers the standard character "TOURNAMENT OF ROSES" mark in Class 9 for "magnets and prerecorded videotapes of parades and football games sponsored by the applicant and related events and activities"; in Class 14 for "jewelry, commemorative pins, decorative pins, rings, watches [and clocks]"; in Class 16 for "bookmarks, letter openers, and publications, namely, souvenir programs"; and Class 25 for "clothing; namely, shirts of various kinds, caps, visors, pants, warm-up suits, sweaters, robes and jackets" (the "'090 Registration").

f.      U.S. Trademark Reg. No. 1,021,701, which covers the standard character "ROSE PARADE" mark in Class 41 for "entertainment and educational services—namely, organizing, promoting and staging an annual parade and related events" (the "'701 Registration").

g.      U.S. Trademark Reg. No. 1,856,603, which covers the standard character "ROSE PARADE" mark in Class 14 for "lapel pins and jewelry," and Class 25 for "clothing; namely, shirts and T-Shirts") (the "'603 Registration").

h.      U.S. Trademark Reg. No. 3,011,684, which covers the standard character "ROSE BOWL PARADE" mark in Class 41 for "educational and entertainment services, namely, organizing, staging an annual parade" (the "'684 Registration").

68.      The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are valid, subsisting, and on the Principal Register.  True and correct copies of the '242; '907; '297; '886; '090; '701; '603; and '684 Registrations are attached as **Exhibits 1** through **8**, respectively.

69.     The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are "incontestable" within the meaning of 15 U.S.C. § 1115(b).

70.     The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are conclusive evidence of Plaintiff's ownership of the marks covered by such Registrations.

71.     The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are conclusive evidence of the validity of the marks covered by such Registrations.

72.     The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are conclusive evidence of the validity of the registration of the marks covered by such Registrations.

73.     The '242; '907; '297; '886; '090; '701; '603; and '684 Registrations, respectively, are conclusive evidence of the Plaintiff's exclusive right to use the marks covered by such Registrations throughout the United States on or in connection with the goods and/or services specified in the such Registrations.

**E.     Defendant's Unlawful Conduct**

74.     In addition to the City's use (without consent) of Plaintiff's game marks and artwork in the stadium, on social media, and otherwise, beginning in December 2020, Defendant embarked on an unlawful scheme designed to sow confusion in the marketplace about who owns the rights to the Rose Bowl Game and its related intellectual property.

75.     For example, on January 1, 2021, the Mayor of Pasadena, acting in his official capacity and on Defendant's behalf, gave an interview to *The New York Times*, the write-up of which included the following false, misleading, and/or deceptive statements of fact attributed or fairly attributable to Defendant (Defendant's January 1 Statements):

    a.     "the city [] shares a trademark on the name of the game with the Tournament of Roses Association […]."

b.   "The football game belongs to the City of Pasadena and the people of Pasadena."

76.   Defendant's January 1 Statements are false, misleading, and/or deceptive.  The second statement quoted above is a quote explicitly attributed to Mayor Gordo acting on Defendant's behalf.  It comes immediately after the first statement quoted above that—although unattributed—is a false statement of fact that in context appears to have been given to the newspaper by an agent of Defendant.

77.   Accordingly, Defendant responsibly participated in the publication of both of the false statements quoted above.

78.   The "game" referenced in Defendant's January 1 Statements is Plaintiff's Rose Bowl Game.

79.   Since January 1, Defendant, its Mayor, councilmembers, and other agents have publicly repeated the same or similar false statements, including (but not limited to) in articles published by the *Pasadena Star-News*.

80.   Plaintiff exclusively owns the incontestable '242 Registration, which conclusively confers upon Plaintiff the exclusive right to use its ROSE BOWL GAME Mark for an annual college football game anywhere in the United States.

81.   Moreover, both the ROSE BOWL GAME and ROSE BOWL Marks appear in Exhibit F to the MLA.  As alleged, *supra*, Defendant expressly agreed in Section 9.1 of the MLA, and again Paragraph 5(d) of the 2020 Amendment to the MLA, that Plaintiff owns the unregistered and registered marks in Exhibit F to the MLA.

82.   What is more, as alleged, *supra*, in the Trademark Agreement, and the Consent Agreement, Defendant agreed that:

a.   Plaintiff is the exclusive owner of the ROSE BOWL GAME trademark, and

b.   Plaintiff owns the ROSE BOWL mark for use in connection with an annual college football game.

19

83.    Defendant also expressly disclaimed in U.S. Trademark Reg. No. 2,305,139 any right to use the standard character ROSE BOWL mark for "the promoting of an annual intersectional football game and parade."

84.    As another example of Defendant's unlawful conduct, on January 14, 2021, Defendant made the inset "TBT" (which is shorthand for "Throwback Thursday") post on @RoseBowlStadium's official Instagram account (Post):



85.    As alleged, *supra*, in the Trademark Agreement, and the Consent Agreement, Defendant agreed:

   a.    That Plaintiff's "Services" included, *inter alia*, using the ROSE BOWL mark for an annual college football game; and

   b.    Not to use the ROSE BOWL mark in connection with Plaintiff's Services.

86.    However, as shown in Paragraph 84, Defendant used the entirety of Plaintiff's ROSE BOWL mark in the Post—twice.  First, Defendant used the hashtag "#RoseBowl" in the Post.  Second, Defendant included in the Post an image of the front cover of official program from the 1956 iteration of Plaintiff's Rose Bowl Game.  Plaintiff's ROSE BOWL mark prominently appears on the front cover of this program.

87.    It was unnecessary for Defendant to use any portion of Plaintiff's ROSE BOWL mark in the Post.  Defendant's prior conduct confirms as much.  For example, on January 4, 2021, Defendant made a "#MemoryMonday" post on its

official Instagram account, wherein it posted a video of the Vince Young-led University of Texas Longhorns defeating the University of Southern California Trojans in the 2006 iteration of Plaintiff's Rose Bowl Game:



88.    As shown in Paragraph 87, unlike Defendant's January 14 Post, its January 4 post did not use any portion of Plaintiff's ROSE BOWL mark; instead, it referred to the 2006 iteration of Plaintiff's Rose Bowl Game as "arguably one of the best college football games in history!"

89.    As another example, on December 28, 2020, Defendant made a "MemoryMonday" post on its official Instagram account, wherein it posted a montage of the 1942 iteration of Plaintiff's Rose Bowl Game:



FIRST AMENDED COMPLAINT, CASE NO. 2:21-CV-01051

90.    As shown in Paragraph 89, unlike Defendant's January 14 Post, its December 28 post did not use any portion of Plaintiff's ROSE BOWL mark; instead, it referred to the 1942 iteration of Plaintiff's Rose Bowl Game—twice—as simply: "game."

91.    Defendant's uses of the entirety of Plaintiff's ROSE BOWL mark in the Post, combined with an image of the official program from the 1956 iteration of Plaintiff's Rose Bowl Game that prominently features Plaintiff's ROSE BOWL mark, is likely to mislead to consumers into believing that, among other things, Defendant is the source or sponsor of Plaintiff's Rose Bowl Game.

**F.    The Parties' Correspondence**

92.    On January 7, 2021, Defendant's counsel sent a letter to Plaintiff's counsel, wherein Defendant stated that, *inter alia*, in the event of a force majeure, the MLA gives Defendant the right to restrict Plaintiff from hosting the Rose Bowl Game in a venue other than Rose Bowl Stadium (Defendant's January 7 Letter).  A true and correct copy of the Defendant's January 7 Letter is attached as **Exhibit 9**.

93.    For example, Defendant contends in the letter that "the only remedy" in the event of a Force Majeure event is "to move the *date*—and not the *venue*—for the game.  (Exh. 9, at 10.)

94.    The statements in Defendant's January 7 Letter are unfounded.  To be sure, as alleged, *supra*, the MLA does not give the Defendant *any* rights to restrict Plaintiff's usage of the marks; instead, under the MLA, Plaintiff has agreed to host its Rose Bowl Game each year at the Rose Bowl Stadium "except in the event of Force Majeure" that prevents the game from being played at the Rose Bowl Stadium on Game Day despite commercially reasonable efforts.  What is more, under Section 20.2(B)(2) of the MLA, Defendant can terminate the MLA if Plaintiff hosts its Rose Bowl Game somewhere other than Rose Bowl Stadium without Defendant's consent—except in the event of force majeure, in which case Defendant's consent is not required.

95.    Plaintiff responded to Defendant's counsel in a January 29, 2021 letter (attached as **Exhibit 10**), contesting many factual mischaracterizations and flawed arguments in the January 7 Letter.   Plaintiff specifically called attention to Defendant's January 1 Statements as false and improperly clouding the title of Plaintiff's ownership of the ROSE BOWL GAME and ROSE BOWL marks. Plaintiff's counsel concluded the January 29, 2021 letter by requesting a conference whereby the parties and their representatives would discuss remaining disagreements.

96.    On February 3, 2021, Defendant's counsel responded in a one-page letter (attached as **Exhibit 11**), rejecting any such meeting or further correspondence as "not fruitful." The letter warned that the City was "considering next steps."   That letter did not mention, contest, or otherwise deny Defendant's January 1 Statements.

97.    Defendant's January 7 and February 3 letters also confirm that there is an ongoing case or controversy between the parties about: (i) ownership of Plaintiff's Rose Bowl Game and its related intellectual property, and (ii) Plaintiff's right to host its Rose Bowl Game at a location other than Rose Bowl Stadium without Defendant's consent.

98.    Accordingly, for the reasons alleged above and below, Plaintiff asserts claims for relief seeking declarations concerning the parties' rights with respect to the Rose Bowl Game and its related intellectual property; to ameliorate the harm that Defendant is causing by disseminating false claims concerning ownership of the Rose Bowl Game and its related intellectual property; to ameliorate the likelihood of confusion that Defendant is causing by using the ROSE BOWL mark; and to remedy Defendant's breach of the MLA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CLAIMS FOR RELIEF

### COUNT I
(Declaratory Relief Under 28 U.S.C.§ 2201(a))
(Declaration of Defendant's Lack of Rights in the ROSE BOWL GAME and
ROSE BOWL Marks for Use in Connection with the Rose Bowl Game)

99.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 98 as though set forth fully herein.

100.   Count I is a claim for declaratory relief under 28 U.S.C. § 2201(a).

101.   Defendant has created an actual and justiciable case or controversy by stating that it has an ownership interest in the ROSE BOWL GAME and ROSE BOWL Marks for use in connection with the Rose Bowl Game (including, without limitation, in Defendant's False, Misleading, and Deceptive Statements).

102.   Based on Plaintiff's exclusive ownership of the ROSE BOWL GAME and ROSE BOWL Marks for use in connection with the Rose Bowl Game, Plaintiff seeks a declaration that Defendant has no ownership interest in either the ROSE BOWL GAME Mark or the ROSE BOWL Mark for use in connection with the Rose Bowl Game.

### COUNT II
(Declaratory Relief Under 28 U.S.C.§ 2201(a))
(Declaration of Plaintiff's Right to Host its Rose Bowl Game Anywhere Without
Defendant's Consent in the Event of Force Majeure)

103.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 102 as though set forth fully herein.

104.   Count II is a claim for declaratory relief under 28 U.S.C. § 2201(a).

105.   Defendant has created an actual and justiciable case or controversy by stating that, under the MLA, it can restrict where Plaintiff hosts the Rose Bowl Game in the event of force majeure.

106.   Under Section 2.1 of the MLA, Plaintiff has agreed to host its Rose Bowl Game each year at Rose Bowl Stadium "except in the event of Force

Majeure" preventing the game from being played at the Rose Bowl Stadium on Game Day, despite the use of commercially reasonable efforts.

107.   Under Section 20.2(B)(2) of the MLA, Defendant can terminate the MLA if Plaintiff hosts its Rose Bowl Game somewhere other than Rose Bowl Stadium without Defendant's consent—except in the event of force majeure.

108.   Based on the foregoing, Plaintiff seeks a declaration that, if a force majeure event occurs under the MLA that prevents the Rose Bowl Game form being played at the Rose Bowl Stadium on Game Day despite the parties' commercially reasonable efforts, then Plaintiff can host its Rose Bowl Game anywhere without Defendant's consent.

**COUNT III**
(Federal Trademark Infringement Under 15 U.S.C. § 1114(1))
(Defendant's Infringement of Plaintiff's
Federally Registered Family of ROSE Marks)

109.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 108 as though set forth fully herein.

110.   Count III is a claim for infringement of federally registered trademarks under 15 U.S.C. § 1114(1).

111.   Plaintiff has the exclusive right to use each member of its federally registered Family of ROSE Marks in United States commerce.  In particular, Plaintiff has the exclusive right to use its federally registered ROSE BOWL GAME mark in United States commerce to advertise and promote its Rose Bowl Game.  Plaintiff also has the exclusive right to use its federally registered ROSE BOWL marks in United States commerce to advertise and promote, *inter alia*, souvenir programs for its Rose Bowl Game.

112.   Plaintiff's exclusive rights in and to its Family of ROSES Marks predate any rights that Defendant could establish in any mark that consists of "Rose Bowl" in whole and/or in part.

113.   Each member of Plaintiff's Family of ROSE Marks is inherently distinctive when used in connection with Plaintiff's Rose Bowl Game.

114.   Each member of Plaintiff's Family of ROSE Marks identifies Plaintiff as the exclusive source of goods and services offered thereunder.  Accordingly, each member of Plaintiff's Family of ROSE Marks has acquired distinctiveness.

115.   Defendant is reproducing Plaintiff's Family of ROSES Marks and/or using colorable imitations and/or confusingly similar variations thereof in United States commerce (including, for example, in Defendant's January 14 Post).

116.   As alleged herein, Defendant's use of Plaintiff's Family of ROSE Marks and/or colorable imitations and/or confusingly similar variations thereof in United States commerce on, for, and/or in connection with advertising and promoting goods and services that consumers uniquely associate with Plaintiff (including, without limitation, the Rose Bowl Game and souvenir programs therefor) is likely to cause confusion, cause mistake, and/or cause deception about whether Defendant and/or Rose Bowl Stadium is/are the source or sponsor of Plaintiff's Rose Bowl Game.

117.   Plaintiff has not consented to Defendant's use of any member of Plaintiff's Family of ROSE Marks for any purpose other than to promote the Rose Bowl Game in the sale of stadium suites and on the stadium's website.

118.   Upon information and belief, Defendant's conduct, as alleged herein, is in furtherance of Defendant's willful, deliberate, and bad-faith scheme of trading upon the extensive consumer goodwill, reputation, and commercial success of goods and services that Plaintiff offers under its Family of ROSE Marks (including, without limitation, Plaintiff's Rose Bowl Game).

119.   Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

120.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

121.   Plaintiff has no adequate remedy at law.

**COUNT IV**
(Federal Trademark Infringement Under 15 U.S.C. § 1125(a)(1)(A))
(Defendant's Infringement of Plaintiff's BOWL GAME Mark)

122.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 121 as though set forth fully herein.

123.   Count IV is a claim for infringement of federally registered trademarks under 15 U.S.C. § 1125(a)(1)(A).

124.   Plaintiff's Family of ROSE Marks includes the unregistered ROSE BOWL Mark for use in connection with advertising, promoting, and hosting the Rose Bowl Game.

125.   Plaintiff has the exclusive right at common law to use its ROSE BOWL Mark in United States commerce to advertise and promote its Rose Bowl Game.

126.   Plaintiff's exclusive rights in and to its ROSE BOWL Mark predate any rights that Defendant could establish in any mark that consists of "Rose Bowl" in whole and/or in part.

127.   Plaintiff's ROSE BOWL Mark is inherently distinctive when used in connection with Plaintiff's Rose Bowl Game.

128.   Plaintiff's ROSE BOWL Mark identifies Plaintiff as the exclusive source of Plaintiff's Rose Bowl Game.   Accordingly, Plaintiff's ROSE BOWL Mark has acquired distinctiveness.

129.   Defendant is reproducing Plaintiff's ROSE BOWL Mark in United States commerce.

130.   For example, Defendant made the Post on the Rose Bowl Stadium's official Instagram account.  In the Post, Defendant used the hashtag "#RoseBowl," and included a cover of the souvenir program from the 1956 iteration of the Rose

FIRST AMENDED COMPLAINT, CASE NO. 2:21-CV-01051

Bowl Game.  In the Post, Defendant also referenced Four Roses Bourbon, which previously sponsored the Rose Bowl Game.  Based on this overall context, consumers understand and recognize the use of "#RoseBowl" in Post as referring to the Rose Bowl Game.

131.  As alleged herein, Defendant's use of Plaintiff's ROSE BOWL Mark in United States commerce on, for, and/or in connection with advertising and promoting the Rose Bowl Game is likely to cause confusion, cause mistake, and/or cause deception about whether Defendant and Rose Bowl Stadium is the source of Plaintiff's Rose Bowl Game.

132.  Plaintiff has not consented to Defendant's use of Plaintiff's ROSE BOWL Mark for any purpose other than to promote the Rose Bowl Game in the sale of stadium suites and on the stadium's website.

133.  Upon information and belief, Defendant's conduct, as alleged herein, is in furtherance of Defendant's willful, deliberate, and bad-faith scheme of trading upon the extensive consumer goodwill, reputation, and commercial success of Plaintiff's Rose Bowl Game offered under Plaintiff's ROSE BOWL Mark.

134.  Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1125(a)(1)(A).

135.  Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

136.  Plaintiff has no adequate remedy at law.

**COUNT V**
**(Federal Unfair Competition, False Association, False Endorsement, and False Designation of Origin Under 15 U.S.C. § 1125(a)(1)(A))**
**(Defendant's Unauthorized Use of Plaintiff's Family of ROSE Marks)**

137.  Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 136 as though set forth fully herein.

138.   Count V is a claim for federal unfair competition, false association, false endorsement, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

139.   Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false association, false endorsement, and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

140.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

141.   Plaintiff has no adequate remedy at law.

**COUNT VI**
(Federal False Advertising Under 15 U.S.C. § 1125(a)(1)(B)
(Defendant's False, Misleading, and Deceptive Statements)

142.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 141 as though set forth fully herein.

143.   Count VI is a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B).

144.   Defendant's January 1 Statements constitute commercial advertising and/or commercial promotion.

145.   Defendant' January 1 Statements are false, misleading, and/or deceptive.  For example, the statement in the January 1, 2021, *New York Times* article by the Mayor of the City of Pasadena, Victor Gordo, that Plaintiff's Rose Bowl Game "belongs to the City of Pasadena and the people of Pasadena" is false, misleading, and/or deceptive.  Indeed, as alleged, *supra*: (i) Plaintiff is the exclusive owner of the ROSE BOWL GAME and ROSE BOWL marks in relation to the Rose Bowl Game; (ii)  Defendant acknowledged Plaintiff's exclusive ownership of these marks in the MLA; and (iii) Defendant expressly disclaimed any right to use the ROSE BOWL mark in relation to the Rose Bowl Game.

146.   Defendant's January 1 Statements are material to third-parties' (including purchasers, consumers, and vendors) decision to license Plaintiff's ROSE BOWL GAME and/or ROSE BOWL Marks.

147.   Defendant's January 1 Statements are likely to deceive consumers into believing that Defendant is owner of the ROSE BOWL GAME and/or ROSE BOWL Marks.

148.   Defendant's January 1 Statements are likely to deceive consumers into believing that Defendant is owner of the Rose Bowl Game.

149.   Defendant placed its January 1 Statements into interstate commerce by, *inter alia*, having them published in an article on *The New Times'* website, which is publicly available and accessible to consumers throughout the United States.

150.   Defendant's January 1 Statements directly and/or proximately caused and/or is likely to cause Plaintiff to suffer harm in the form of lost licensing opportunities, as well as irreparable diminution to the reputation, fame, and goodwill of Plaintiff's ROSE BOWL GAME and ROSE BOWL Marks, and Rose Bowl Game.

151.   Upon information and belief, Defendant's acts and conduct complained of herein (including, without limitation, Defendant's January 1 Statements) constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

152.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

153.   Plaintiff has no adequate remedy at law.

## COUNT VII
### (Unfair Competition Under Cal. Bus. & Prof. Code § 17200)
### (Defendant's Unauthorized Use of Plaintiff's Family of ROSE Marks)

154.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 153 as though set forth fully herein.

155.   Count VII is a claim for unfair competition under CAL. BUS. & PROF. CODE § 17200.

156.   Upon information and belief, Defendant's acts and conduct complained of herein (including, without limitation, Defendant's violations of the Lanham Act) are unlawful and unfair and, therefore, violate CAL. BUS. & PROF. CODE § 17200.

157.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

158.   Plaintiff has no adequate remedy at law.

**COUNT VIII**
(Trademark Infringement Under California Common Law)
(Defendant's Infringement of Plaintiff's Family of ROSE Marks)

159.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 158 as though set forth fully herein.

160.   Count VIII is a claim for trademark infringement under California common law.

161.   Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of California common law.

162.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

163.   Plaintiff has no adequate remedy at law.

**COUNT IX**
(Breach of Contract Under California Law)
(Defendant's Material Breaches of the MLA)

164.   Plaintiff repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 163 as though set forth fully herein.

165.   Count IX is a claim for breach of contract under California law.

31

166.   Plaintiff and Defendant duly executed the MLA, the Trademark Agreement, and the Consent Agreement, all of which are subject to the laws of California.

167.   Plaintiff has performed all of its obligations under the MLA, the Trademark Agreement, and the Consent Agreement.

168.   Defendant is materially breaching its obligations under the MLA, the Trademark Agreement, and the Consent Agreement by interfering with Plaintiff's exclusive right to use its ROSE BOWL GAME and ROSE BOWL Marks (including, for example, Defendant's False, Misleading, and Deceptive Statements).

169.   Defendant is materially breaching its obligations under the MLA, the Trademark Agreement, and the Consent Agreement by using the ROSE BOWL Mark in connection with advertising and promoting the Rose Bowl Game (including, for example, the Post).

170.   Upon information and belief, Defendant's acts and conduct complained of herein constitute breach of contract in violation of California law.

171.   Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

172.   Plaintiff reserves its right to seek actual damages, but presently seeks nominal damages as the Defendant's "failure to perform a duty required by contract is a legal wrong, independently of actual damage sustained by the party to whom performance is due." *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1010 (citing *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959)); *see also Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (March 8, 2021) (holding "an award of nominal damages by itself can redress a past injury").

## **PRAYER FOR RELIEF**

**WHEREFORE**, based on the foregoing, Plaintiff prays that the Court enter judgment as follows:

A.      Declaration that Defendant has no rights in the ROSE BOWL GAME mark or—when used in connection with organizing, staging, promoting, and/or hosting an annual college football game—the ROSE BOWL marks;

B.      Declaration that, if a Force Majeure event occurs under the MLA that prevents the Rose Bowl Game from being played at the Rose Bowl Stadium on Game Day, despite the parties' commercially reasonable efforts, then Plaintiff, by itself and/or through a licensee, can organize, stage, promote, and/or host the Rose Bowl Game anywhere in the United States without Defendant's consent;

C.      An Order declaring that Defendant's conduct, as alleged herein, constitutes trademark infringement in violation of 15 U.S.C. § 1114(a); 15 U.S.C. § 1125(a)(1)(A); and California common law;

D.      An Order declaring that Defendant's conduct, as alleged herein, constitutes unfair competition, false endorsement, false association, and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A); CAL. BUS. & PROF. CODE § 17200; and California common law;

E.      An Order declaring that Defendant's conduct. as alleged herein, constitutes false, misleading, and/or deceptive advertising in violation of 15 U.S.C. § 43(a)(1)(B);

F.      An Order declaring that Defendant's conduct, as alleged herein, constitutes breach of contract under California law;

G.      Pursuant to 15 U.S.C. § 1116(a):

1.      Preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons in active concert and participation with them, from using either the ROSE BOWL GAME or—in connection with advertising, marketing, promoting, hosting, and/or staging an annual college football game—the ROSE BOWL marks, as well as any other mark that

33

is confusingly similar and/or identical to the ROSE BOWL GAME and ROSE BOWL marks;

2.   Ordering Defendant to file with the Court and serve upon Plaintiff's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

H.   Pursuant to 15 U.S.C. § 1117(a):

1.   Awarding to Plaintiff its costs incurred in this lawsuit;

2.   Declaring that Defendant's conduct, as alleged herein, is "exceptional";

3.   Declaring that Plaintiff is the "prevailing party" in this lawsuit; and

4.   Awarding to Plaintiff its reasonable attorneys' fees incurred in this lawsuit, including fees pursuant to California Code of Civil Procedure § 1021.5 and as otherwise allowed by law;

I.   Pursuant to 15 U.S.C. § 1118:

1.   Ordering the destruction of all unauthorized goods and materials within Defendant's possession, custody, or control that contain, feature, display, and/or bear the ROSE BOWL GAME and ROSE BOWL marks, whether in tangible or intangible form, and

2.   Ordering the destruction of all unauthorized goods and materials within Defendant's possession, custody, or control that contain, feature, display, and/or bear any mark that is identical and/or confusingly similar to the ROSE BOWL GAME or ROSE BOWL mark; and

J.   Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

1

## **<u>JURY DEMAND</u>**

2        Plaintiff requests a trial by jury for all issues so triable pursuant to FED. R.

3  CIV. P. 38(b) and 38(c).

4

5  Dated:  March 23, 2021    Respectfully submitted,

6                             MAYER BROWN LLP

7                             By:  */s/ John Nadolenco*

8                             JOHN NADOLENCO (SBN 181128)
                             *jnadolenco@mayerbrown.com*

9                             C. MITCHELL HENDY (SBN 282036)
                             *mhendy@mayerbrown.com*

10                           350 South Grand Avenue, 25th Floor
                           Los Angeles, CA 90071-1503

11                           Telephone: (213) 229-9500

12                           A. JOHN P. MANCINI (pro hac vice)
                           *jmancini@mayerbrown.com*

13                           JONATHAN W. THOMAS (pro hac vice)
                           *jwthomas@mayerbrown.com*

14                           1221 Avenue of the Americas
                           New York, NY 10020

15                           Telephone: (212) 506-2295

16                           Attorneys for Plaintiff

17                         Pasadena Tournament of Roses Association

18

19

20

21

22

23

24

25

26

27

28