# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PASADENA TOURNAMENT OF ROSES ASSOCIATION,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF PASADENA,<br><br>                    Defendant. | Case No. 2:21-CV-01051-AB-JEMx<br><br>**ORDER DENYING MOTION TO STRIKE; ORDER GRANTING MOTION TO DISMISS** |

Before the Court is Defendant City of Pasadena's ("City" or "Defendant") Motion to Strike, (Dkt. No 21, "Motion to Strike") and Motion to Dismiss, (Dkt. No. 32, "Motion to Dismiss").   Plaintiff Pasadena Tournament of Roses Association ("Tournament" or "Plaintiff") opposed.  (Dkt. No. 39, "Opp'n.)  Defendant replied. (Dkt. No. 40, "Reply").  The Court heard oral arguments on May 14, 2021 and took the matter under submission.  Dkt. No. 42.  For the foregoing reasons, the Court **DENIES** the Motion to Strike and **GRANTS** the Motion to Dismiss.

## I.  BACKGROUND

### a.  Factual Background

The following facts are taken from Plaintiff's First Amended Complaint.  (Dkt. No. 29, "FAC").  For over a century, Plaintiff has hosted its world-famous Rose

Parade and Rose Bowl Game as part of its annual New Year's Day Celebration.  FAC, ¶ 2.  Plaintiff hosts the Rose Bowl Game at the Rose Bowl Stadium, pursuant to three contracts with Defendant, the Master License Agreement ("MLA"), the Trademark Agreement, and a trademark Consent Agreement.  *Id.*, ¶¶ 2, 44.  The parties agree that pursuant to these agreements, Plaintiff is the exclusive owner of the Rose Bowl Game trademark and owns the mark for use in connection with the annual game.  *Id.*, ¶ 82. For many years, Defendant has worked with Plaintiff behind the scenes to help ensure the success of Plaintiff's annual Rose Bowl Game hosted at Defendant's Rose Bowl Stadium—with those joint efforts resulting in great economic benefit to Plaintiff, Defendant, the Pasadena community, and the greater Los Angeles area.  *Id.*, ¶ 4. Recently, Defendant has disrupted that relationship by interfering with Plaintiff's trademark rights, both via statements made in news articles and via an Instagram post. *Id.*, ¶¶ 5, 6, 12.

These interferences began when, in light of the COVID-19 pandemic, the Rose Bowl Game took place outside of Pasadena.  *Id.*, ¶ 35.  On December 18, 2020, it was decided that Los Angeles was unsuitable as a site for college football and it was not feasible to play the game in Pasadena.  *Id.*, ¶ 39.  The game would instead be played in AT&T Stadium in Arlington, Texas.  *Id.*  On January 7, 2021, Defendant's counsel sent a letter to Plaintiff's counsel, wherein Defendant stated that in the event of a force majeure, the MLA gives Defendant the right to restrict Plaintiff from hosting the Rose Bowl Game in a venue other than Rose Bowl Stadium.  *Id.*, ¶ 92; Dkt. No. 29-9 at 1-13 ("January 7 Letter").  Plaintiff responded by contesting these factual mischaracterizations.  *Id.*, ¶ 95.  The parties conferred further and Defendant finally warned that it was "considering next steps."  *Id.*, ¶ 96.  Accordingly, Plaintiff now asserts claims for relief seeking declarations concerning the parties' rights with respect to the Rose Bowl Game and its related intellectual property; to ameliorate the harm that Defendant is causing by disseminating false claims concerning ownership of

2.

the Rose Bowl Game and its related intellectual property; to ameliorate the likelihood of confusion that Defendant is causing by using the Rose Bowl mark; and to remedy Defendant's breach of the MLA. *Id.*, ¶ 98.

### b.  Procedural Background

Plaintiff filed its initial complaint on February 4, 2021.  Dkt. No. 1.  On March 2, 2021, Defendant filed it Motion to Strike, which sought to strike Count 11 of the complaint.  *See*  Motion to Strike.  Thereafter, Plaintiff filed its First Amended Complaint, dropping Count 11 and making other amendments.  *See* FAC.  The instant Motion to Dismiss followed.

## II. REQUEST FOR JUDICIAL NOTICE

Defendant asks the Court to take judicial notice of twelve exhibits, ranging from news articles, Instagram posts, dictionary definitions, and parts of the parties' MLA.  (Dkt. No. 33, "RJN").  Under Federal Rule of Evidence 201(b), federal courts may take judicial notice of facts not "subject to reasonable dispute" and capable of immediate and accurate determination by resort to a source whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b)(1)(b)(2).  This includes matters of public record found outside of the pleadings, such as court records, orders, and other documents related to the proceeding.  *See MGIC Indem. Co. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

Plaintiff does not oppose any aspect of the RJN and no parties dispute the authenticity of any of the referenced exhibits.  Accordingly, the Court **ACCEPTS** Defendant's request and takes judicial notice of all exhibits listed in the RJN.

## III.   LEGAL STANDARD

### a.  Motion to Strike

"Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009.)  California's anti-SLAPP

1   statute authorizes a special motion to strike claims "arising from any act of that person
2   in furtherance of the person's right of petition or free speech under the United States
3   or California Constitution in connection with a public issue." Cal Civ. Proc. Code §
4   425.16.

5       Courts undertake a two-step process to resolve anti-SLAPP motions. *Hilton v.*
6   *Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2009). First, the court decides whether
7   the defendant has made a threshold showing that the challenged cause of action is one
8   arising from protected activity. *Barry v. State Bar of California*, 2 Cal. 5th 318, 321
9   (2017). If the claim does arise from protected activity, the burden shifts to the
10  plaintiff to show a "probability of prevailing on the claim." *Hallmark*, 599 F.3d at
11  903. At this second step, Plaintiff need only convince the court that its claim has
12  "minimal merit" or a minimum level of legal sufficiency and triability." *Manzari v.*
13  *Assoc. Newspapers Ltd,* 830 F.3d 881, 889 (9th Cir. 2016). If an anti-SLAPP motion
14  challenges the "legal sufficiency" of a claim, then federal courts apply Rule 12(b)(6)
15  standards. *Planned Parenthood Fed,n of Am., Inc. v. Ctr. For Med. Progress*, 890
16  F.3d 828, 834 (9th Cir. 2018).

17          **b.  Motion to Dismiss: 12(b)(1) Subject Matter Jurisdiction**

18          To bring suit in federal court, a party "must satisfy the case or controversy
19  requirement of Article III by demonstrating his standing to sue at each stage of the
20  litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).
21  To establish standing, the plaintiff must demonstrate (1) that he has suffered an injury-
22  in-fact, (2) that the injury-in-fact is traceable to the defendants, and (3) that a
23  favorable decision will adequately redress his injury. *Id.* (quoting *Fortyune v. Am.*
24  *Multi-Cinema, Inc.*, 364 F.2d 1075, 1081 (9th Cir. 2004)). A defendant's Rule
25  12(b)(1) attack on a court's subject matter jurisdiction may be facial, claiming that the
26  facts accepted as true do not establish jurisdiction, or factual, claiming that the facts
27  establishing jurisdiction are not true. *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*,
28  594 F.2d 730, 733 (9th Cir. 1979). Whereas, in determining a facial attack, a court

4.

must accept the allegations in the complaint as true, the court generally does not accept the allegations as true in adjudicating a factual attack. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### c. Motion to Dismiss: 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 8 requires a plaintiff to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough details to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (internal quotation marks omitted).

## IV.  DISCUSSION

### a. Motion to Strike

Neither parties dispute that the Motion to Strike is moot due to Plaintiff's voluntary dismissal of the claim at issue. Where the parties diverge is whether Defendant is a the "prevailing party" and thus entitled to attorneys' fees.

"[W]hen a claim is dismissed after an anti-SLAPP motion is filed but before the

5.

motion is heard, the movant will sometimes, but not always, have 'prevailed' within the meaning of the statute, such that fee shifting is appropriate." *Pandora Jewelry, LLC v. Bello Paradiso, LL*C, No. CIV S–08–3108 LKK/DAD, 2009 WL 1953468, *3 (E.D. Cal. July 1, 2009) (citing *Pfeiffer Venice Props. v. Bernard*, 101 Cal. App. 4th 211, 218 (2002)).

The Court **DENIES** the Motion to Strike as moot but finds that it is premature to determine whether Defendants have prevailed within the meaning of the anti-SLAPP statute until a motion for costs and attorneys' fees is filed and Plaintiff can more fully oppose such motion.  Such motion must be filed within 14 days of this Order.

### b.  Motion to Dismiss: 12(b)(1): Subject Matter Jurisdiction

Defendant argues there is no case or controversy sufficient to confer jurisdiction over either of Plaintiff's declaratory relief counts.  Mot. at 19.

Declaratory relief is proper where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506 (emphasis added).  If those conditions do not exist, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is proper.  *Rhoades v. Avon Prods., Inc*., 504 F.3d 1151, 1157 n.3 (9th Cir. 2007).

### 1.  Count 1: Declaratory Relief

Count 1 seeks a declaration that "Defendant has no ownership interest in either the ROSE BOWL GAME mark or the ROSE BOWL Mark for use in connection with the Rose Bowl Game."  FAC, ¶ 102.

Plaintiff argues that there is a substantial controversy with respect to the marks because Defendant has publicly and privately taken the position that it has the right to control Plaintiff's use of the marks.  Opp'n at 3.  Thus, Plaintiff contends that it seeks a declaration confirming that Defendant lacks control over Plaintiff's use of its intellectual property.  Opp'n at 3.  However, that is not what Count 1 currently states.

6.

What Plaintiff actually seeks in Count 1 is "a declaration that Defendant has no ownership interest" in Plaintiff's trademarks.  FAC, ¶ 102  There is no controversy over "ownership" because, as Plaintiff admits, Defendant has confirmed "that [Plaintiff] alone owns the trademarks associated with the Rose Bowl Game."  Dkt. No. 30 at 5.

Accordingly, because there is no controversy with respect to ownership interest, this Court lacks subject matter jurisdiction over Count 1.  Defendant's Motion with respect to first count for declaratory relief is **GRANTED** and the claim is **DISMISSED**.

### 2.  Count 2: Declaratory Relief

Count 2 seeks a declaration of Plaintiff's rights under the *force majeure* provision in the MLA: "Plaintiff seeks a declaration that, if a force majeure event occurs under the MLA that prevents the Rose Bowl Game from being played at the Rose Bowl Stadium on Game Day despite the parties' commercially reasonable efforts, then Plaintiff can host its Rose Bowl Game anywhere without Defendant's consent."  FAC ¶ 108.

Defendant argues that this claim should be dismissed because it rests upon contingent future events that may not occur.  Plaintiff counters that it is irrelevant that no current force majeure event is asserted, that Count 2 just seeks clarity as to how the force majeure provision works under the MLA.  The Court agrees with Defendant.

A plaintiff seeking declaratory relief must "show a very significant possibility of future harm" on a declaratory judgment claim.  *San Diego Cty. Gun Rights Comm. v. Reno,* 98 F.3d 1121, 1126 (9th Cir. 1996).  The "controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."  *Ward v. City of Barstow,* No. EDCV 15-0444-DSF (RNB), 2015 WL 4497950, at *6 (C.D. Cal. July 22, 2015).  Plaintiff points to Defendant's letter following the most recent Rose Bowl Game to

7.

suggest that it requires clarity on its contractual rights in order to prevent a similarly

fraught negotiation in the future.  In the letter, Defendant's counsel states:

> The requirements and restrictions in the MLA are so important to the parties and to the life of the Rose Bowl Game that a breach of it entitles the aggrieved party to seek equitable remedies to compel enforcement under Section 2.1. The parties should attempt to reach agreement on the meaning of the language in the MLA . . . .  If the parties continue to disagree, potential future options could include nonbinding mediation in front of a retired judge, among other options."

January 7 Letter at 13.  Unfortunately, the Court cannot provide clarity on contractual

language based on a potential breach of contract in the future.  While Plaintiff points

to issues surrounding the pandemic and other seemingly fraught negotiations between

the parties, Plaintiff has not pleaded any facts to show a very significant possibility of

another force majeure event or of either party breaching the MLA if such an event did

arise.

As written, the claim rests upon contingent future events that may not occur as

anticipated.  Accordingly, the claim is not ripe for adjudication and not appropriate for

declaratory relief at this juncture.  Defendant's Motion with respect to the second

count for declaratory relief is **GRANTED** and the claim is **DISMISSED**.

### C. Motion to Dismiss: 12(b)(6): Failure to State a Claim

Next, Defendants move to dismiss Plaintiff's Trademark/Unfair Competition

claims (Counts 3-5, 7-8), False Advertising claim (Count 6), and Breach of Contract

claim (Count 9).  The Court will address each in turn.

#### 1. Counts 3-5; 7-8: Trademark/Unfair Competition Claims

In Counts 3 through 5 of the FAC, Plaintiff asserts claims for trademark

infringement, unfair competition, false association, false endorsement, and false

designation of origin, respectively, under Sections 32 and 43(a)(1)(A) of the Lanham

Act.  *See generally* FAC at ¶¶ 109–141. In Count 7, Plaintiff asserts a claim for unfair

competition under Cal. Bus. & Prof. Code § 17200. *See id*. at ¶¶ 154–58.  In Count 8,

Plaintiff asserts a claim for trademark infringement under California common law. *See id*. at ¶¶ 159–163.  Each of these claims arise out of Defendant's alleged use of the "Rose Bowl" mark in an Instagram post made on the Rose Bowl Stadium's official Instagram account, together with an image of the official program from the 1956 iteration of the Rose Bowl Game.  FAC, ¶¶ 84, 115, 122, 130, 137, 154, 159.

The parties agree that the same standard governs all of these claims, namely: (1) plaintiff's ownership of a valid mark; (2) the defendant used the mark in commerce and (3) the defendant's use of the mark is likely to cause confusion.  *Tiermy v. Moschino S.p.A.*, 15-cv-05900, 2016 WL 4942033, at *5 (C.D. Cal. Jan. 13, 2016). Defendants do not challenge the sufficiency of Plaintiff's allegations in the FAC with respect to the first two elements.  Instead, Defendant argues that Defendant's use of "Rose Bowl" is nominative fair use and thus the third element should be considered using that unique analysis.  Alternatively, Defendant's argue that the Instagram post is an expressive work protected by the First Amendment.

The Court finds it appropriate to consider the nominative fair use defense because the entirety of the Instagram post at issue is before the Court and its contents are not disputed.  FAC ¶ 84.  "Where a defendant uses a trademark to describe plaintiff's product rather than its own product, that defendant is entitled to the nominative fair use defense."  *1800 Get Thin, LLC v. Hiltzik*, No. 11-00505, 2011 WL 3206486, at *2 (C.D. Cal. July 25, 2011).  Nominative fair use is appropriate in the "class of cases where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *New Kids on the Block v. News America Publishing, Inc.*, 971 F.3d 302, 308.  "Such nominative use of a mark—where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law: Because it does not implicate the source identification function that is the purpose of trademark, it does not constitute unfair competition; such use is fair because it does

not imply sponsorship or endorsement by the trademark holder." *Id*.  Thus, to invoke such a defense, a defendant must meet the following three requirements: (1) the product or service in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as reasonable necessary to identify the product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1009 (9th Cir. 2001) (citing *New Kids*, 971 F.3d at 308-09).  Plaintiff bears the burden of establishing that the City's use of "Rose Bowl" was *not* a nominative fair use. *See Academy of Motion Picture Arts and Sciences v. GoDaddy.com*, No. 13-08458, 2015 WL 5311085, at *42 (C.D. Cal. Sept. 10, 2015) (Birotte, J.) (quoting *Toyota*, 610 F.3d at 1182).

With respect to the first requirement, Defendant argues that the Rose Bowl Game is not readily identifiable without using the term "Rose Bowl."  The Court agrees.  The Instagram post uses "#RoseBowl" in plain text to describe the 1956 Rose Bowl Game program depicted in the post.  Compl., ¶ 84 ("#TBT to 1956 when @UCLAFootball was in the #RoseBowl . . . .").  That program includes the term "Rose Bowl" on its cover.  *Id*.  While Defendant certainly could have called it the "game played on New Year's Day in Pasadena," parties need not vaguely describe a mark as opposed to using the trademark itself.  *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 802 (9th Cir. 2002) ("[T]here is no other way that Ms. Welles can identify or describe herself and her services without venturing into absurd descriptive phrases. To describe herself as the 'nude model selected by Mr. Hefner's magazine as its number-one prototypical woman for the year 1981' would be impractical as well as ineffectual in identifying Terri Welles to the public.")  Plaintiff argues that because Defendant has referred to the Rose Bowl Game as "the game" in the past, then this proves that the Rose Bowl Game is readily identifiable without using the term.  Opp'n

10.

at 10–11.  However, as noted by Defendant, the fact that Defendant was referencing the Rose Bowl Game in these past posts is clear not from the words "the game" but from context and the fact that these posts include video clips that use the term "Rose Bowl" to refer to the game.  Reply at 12; RJN, Exhs. 10, 11.  Accordingly, the Court finds that the Plaintiff has not shown that the Rose Bowl Game is readily identifiable without using the term "Rose Bowl."

With respect to the second requirement, Defendant argues that it only uses so much of the mark as is reasonably necessary to identify the game.  The Court agrees.  Plaintiff takes issue with the fact that the term "Rose Bowl" is used twice, but does not bring forth any support to suggest this is per se unreasonable.  *See Adaptive Marketing*, 2009 WL 8464168, at *4 ("no factual allegation [] suggests Defendants have used more than what they needed to be able to communicate" their message).  Additionally, Plaintiff suggests that it was unnecessary for Defendant to use Plaintiff's mark at all and again points to Defendant's other posts where it did not use the term "Rose Bowl."  Opp'n at 12.  However, the question is not whether it is *necessary* for Defendant to use the "Rose Bowl" mark, but whether it used only so much of the mark as is reasonably necessary to identify the Rose Bowl Game.  *See Clark v. America Online Inc.*, No. CV-98-5650, 2000 WL 33535712, at *5 (finding that the proper inquiry for nominative fair use is not whether use of Dick Clark's name is necessary to evoke the 1960s but whether it only used his name as reasonably necessary to communicate their intended message).  The Complaint does not allege any well-pleaded facts suggesting that Defendants used more of the marks than reasonably necessary to communicate its intended message.

Lastly, Defendant argues that it does nothing to suggest association or sponsorship by Plaintiff.  Mot. at 25.  Again, the Court agrees.  Defendant posted from its Instagram account, @rosebowlstadium.  FAC, ¶ 84.  It did not use any express or implied language of sponsorship or endorsement or "tag" Plaintiff's accounts.  *Id.*

1  Plaintiff does not allege that Defendant used language suggesting that Plaintiff

2  sponsored or endorsed the post's content.  Instead, Plaintiff merely contends that

3  Defendant cannot use the term "Rose Bowl" to refer to the game because of the

4  possibility of confusion.  Such conclusory allegations of likelihood of confusion are

5  insufficient to plead there was a suggestion of association or sponsorship.  *See Applied*

6  *Underwriters*, 913 F.3d at 896–97 (finding the same).

7      With all three requirements pointing toward Defendant, the Court finds Plaintiff

8  has not met its burden of proving Defendant's use of the Rose Bowl mark is not a

9  nominative fair use.  Ultimately, the Court does not find that Defendant is attempting

10  to capitalize on consumer confusion or to appropriate the Rose Bowl Game via this

11  Instagram post.  Plaintiff and Defendant have been business partners for decades.  Due

12  to this mutually beneficial relationship, Plaintiff has consistently benefitted from

13  Defendant's promotion of Plaintiff's game and its history and likely encourages such

14  promotion.  As discussed in oral argument, that this claim is being brought now is

15  puzzling to the Court and it is clear that this claim is not the crux of the parties'

16  conflict.

17      Because the Court finds that Defendant prevails on its nominative fair use

18  defense, the Court need not discuss whether the post was an expressive work.

19  Accordingly, Defendant's Motion is **GRANTED** with respect to Counts 3-5, 7, and 8.

20  Because the Court had the entirety of the Instagram post before it, the Court finds that

21  no further factual allegations can save Plaintiff's claims as they pertain to such post.

22  Thus, the claims are dismissed without leave to amend.

23  ### 2.  Count 6: False Advertising

24      Defendant argues that Plaintiff fails to state a claim for false advertising

25  because the article at issue is not an advertisement, the alleged statements are not

26  about the parties' goods or services, and the statement is one of opinion.  Mot. at 29.

27  Plaintiff argues that the allegations in the FAC are sufficient to state a plausible false

28

advertising claim.  The Court agrees with Defendant, in part.

Under the Lanham Act, to prevail on its false advertising claim, a plaintiff must sufficiently allege five elements: (1) defendant's conduct or statements constitute commercial speech; (2) the statement contains misrepresentations; (3) defendant is in commercial competition with plaintiff; (4) the statement was made for the purpose of influencing consumers to buy defendant's goods or services, and (5) the statement is sufficiently disseminated to the relevant purchasing public. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114–15 (9th Cir. 2021).

Plaintiff alleges that on January 1, 2021, the Mayor of Pasadena, gave an interview to the New York Times and stated that "the city [] shares a trademark on the name of the game with the Tournament of Roses Assocation [...]" and that "The football game belongs to the City of Pasadena and the people of Pasadena."  FAC, ¶ 75.  Plaintiff alleges that these statements are false, misleading, and/or deceptive because it is Plaintiff who owns the Rose Bowl Game.  Notably, the *New York Times* articles does *not* attribute the first statement to the Mayor.  RJN, Exh. 3.  Thus, the only statement at issue is the second as it is the one only that is actually attributed to the Mayor.

The Court finds that Plaintiff's false advertising claim fails at the second element (statements containing misrepresentations).  Plaintiff's claims must reasonably allege that the City's January 1 statements include false or misleading representations of fact.  *Ariix, LLC*, 985 F.3d at 1121.  "[A] false advertising claim may be based on implied statements" as long as those statements are specific and deceptive.  *Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020). Statements of opinion and puffery, however, are not actionable.  *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (finding that a title company's statement that an escrow agent was (a) too small to handle defendant's business and (b) not licensed in California was not actionable).

Such statements are "not a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Id.*, at 731–32.

Here, the parties do not dispute who actually owns the Rose Bowl Game.  The Mayor's general statement is not a representation of fact with respect to who owns the marks but appears to reflect Defendant's pride for the nearly 100-year-old annual football game held in Defendant's Rose Bowl Stadium.  The Court agrees with Defendant that Plaintiff cannot reasonably dispute that, separate and apart from intellectual property ownership, the heart and soul of the Rose Bowl Game belongs to the people of Pasadena.  As Plaintiff notes, the City "functions as . . . the geographic location and owner of the venue for [Plaintiff's] Rose Bowl Game."  Opp'n at 21.  Indeed, the City has been the home of the Rose Bowl Game since 1923.  FAC, ¶¶ 24-30.  Accordingly, the Court finds that the Mayor's statement is merely opinion or puffery and not the type of statement "reasonably interpreted as a statement of objective fact" surrounding the intellectual property ownership.  *Coastal Abstract*, 173 F.3d at 734.

Accordingly, Defendant's Motion with respect to the false advertising claim is **GRANTED** and the claim is **DISMISSED**.   Because the Court had the entirety of the quote before it, the Court finds that no further factual allegations can save Plaintiff's claims as they pertain to such quote.  Thus, the claims are dismissed without leave to amend.

### 3.  Count 9: Breach of Contract

Lastly, Defendant argues that Plaintiff's breach of contract claim fails because it is based on Plaintiff's deficient false advertising and trademark claims.  Mot. at 33.  The Court agrees.

Under California law, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's

14.

performance or excuse for nonperformance; (3) defendant's breach; and

(4) damages to plaintiff as a result of the breach." *ProMex v. LLC Hernandez*, 781

F. Supp. 2d 1013, 1017 (C.D. Cal. 2011).

Plaintiff's breach-of-contract claim is based on its trademark and false

advertising claims.  Specifically, the claim rests on Defendant's alleged breaches of

the MLA, including the Instagram post (which breaches Defendant's obligation not to

use Plaintiff's mark without approval) and the Mayor's January 1 statement (which

breaches Defendant's obligation not to interfere with Defendant's exclusive

ownership and right to use the marks).  *See* FAC ¶¶ 168, 169.

Because Plaintiff cannot state facts sufficient to prevail on either of these

claims, Plaintiff's breach of contract claim also fails.  A complaint must allege

sufficient facts to establish each element of a cause of action, and Plaintiff has not

established that there has been a breach of the MLA. *See Sears v. County of Monterey*,

No. 11-01876, 2012 WL 368688, at *4 (N.D. Cal. Feb. 3, 2012) ("Plaintiffs have

failed to allege a plausible claim for breach of contract . . . . If [plaintiff's] intention is

to state a claim for breach of contract, he must allege such facts to support each

element of his claim.").

Defendant also argues that the claim fails because Plaintiff only alleges nominal

damages.  Mot. at 32.  Plaintiff responds that nominal damages may be awarded on a

breach of contract claim.  Opp'n at 23.  The Defendant does not dispute that fact, but

*at the pleading stage*, "a breach of contract claim requires a showing of appreciable

and actual damages." *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015

(9th Cir. 2000); *Mazal Grp., LLC v. Espana*, 2017 WL 6001721, at *4 (C.D. Cal. Dec.

4, 2017) ("a plaintiff must allege appreciable and actual damage rather than nominal

damages or speculative harm.").  Plaintiff alleges for the first time in its Opposition

that it suffered reputational harm and loss of goodwill as a result of Defendant's

breach of contract.  Opp'n at 23.  Plaintiff further states that it "should have the right

15.

to take discovery on actual damages." *Id.*  However, Plaintiff cannot save its claim via its moving papers and makes no attempt to explain how discovery is necessary to establish its alleged injury.

Accordingly, Defendant's Motion with respect to the breach of contract claim is **GRANTED** and the claim is **DISMISSED**.  Given Plaintiff's admission that it must conduct discovery in order to establish its damages, the Court finds that leave to amend would be futile.

## VI.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike is **DENIED** as moot. Defendant's Motion to Dismiss is **GRANTED**.  All of Plaintiff's claims in its First Amended Complaint are **DISMISSED**, with prejudice.

Any subsequent Motion for Attorneys' Fees must be filed within 14 days of the filing of this Order. The Scheduling Conference and all other pending dates are hereby vacated.

Dated: July 12, 2021            _____
                                HONORABLE ANDRÉ BIROTTE JR.
                                UNITED STATES DISTRICT COURT JUDGE

16.